STATE OF MINNESOTA, *ex rel.* CENTRAL RAILROAD COMPANY, *vs.* SUPERVISORS OF TOWN OF LIME.

April 17, 1877.

**Special Town Meeting—Decision by Town Clerk that Signers of Request are Freeholders is Conclusive.**—When a written statement is duly filed, under Gen.

St. *c.* 10, § 16, for a special town meeting, the question whether the persons subscribing such statement as freeholders are legally such, in fact, is one for the town clerk to determine prior to giving notice of the meeting; and the decision thereof by him is conclusive upon any town officers upon whom is imposed the performance of any act or duty consequent upon the result of the meeting.

**Same—Presumption of Proper Notice.**—After such special meeting has been held, pursuant to notice given by the town clerk the requisite length of time, it will be presumed that such notice was properly posted, and in the requisite number of places, in the absence of any clear proof to the contrary.

**Resolution Voting Bonds to Railroad on Conditions.**—Under the requisite legislative authority conferred by Sp. Laws 1869, *c.* 46, the town of Lime duly adopted a resolution "authorizing and directing its supervisors and their successors in office to issue and deliver to the Minnesota & Northwestern Railroad Company, (the relator herein,) the bonds of said town, with interest coupons attached, to the amount of $4,000, * * * one-half of said bonds to be delivered to said company whenever it shall have graded and bridged its road from the city of Mankato for twelve miles in a southerly direction, and the other half to be delivered when the said railroad is completed to Wells, * * * the iron laid, and the cars running thereon. Provided, that said last instalment of bonds shall never be delivered unless said thirty-nine miles of railroad is so completed before the first day of August, A. D. 1872." *Held,* 1. The adoption of this resolution created a statutory obligation binding the town to issue the bonds, in accordance with its terms and conditions, upon performance thereof by said company. No written agreement nor formal acceptance was necessary on the part of the company to give effect and validity to the resolution. It was in the nature of a standing offer, of which the company could avail itself, by entering upon the construction of its road, at any time before it was rescinded or withdrawn.

**Same—Condition held to have been Complied with.**—2. That said company was entitled to receive the instalment of bonds therein first specified, upon the grading and bridging of the first twelve miles of road from Mankato, though such work was not all done prior to said first day of August, 1872.

*Mandamus* to compel the execution and delivery to plaintiff of interest-bearing bonds of the town of Lime, to the amount of $7,500.

*T. R. Huddleston,* for relator.

*Waite & Freeman* and *Daniel Buck,* for respondents.

CORNELL, J.[1]  By Sp. Laws 1869, *c.* 46, the town of Lime, in the county of Blue Earth, was authorized, by vote of a majority of its legal voters present and voting at any

[1] Gilfillan, C. J., having been of counsel, did not sit in this case.

annual, or regularly called special, town meeting, to issue its bonds to aid in the construction of any railroad running into, or proposed to be built through, said county, to fix the amount and size of the bonds to be issued, the terms and conditions upon which, and the person or corporation to whom, they should be issued, and to direct and empower its supervisors to carry such its vote into effect. Under this statute a special town meeting was called and held in conformity, as is claimed by the relator, with the provisions of the General Statutes relating to special town meetings, (Gen. St. *c.* 10, §§ 16, 17, *et seq.*,) in which the electors of the town generally participated, and at which a resolution was adopted by the requisite majority, pursuant to the notice given of the meeting, which, in terms, authorized and directed the supervisors of said town, and their successors in office, to issue and deliver to the relator a certain amount of bonds, etc., upon certain terms and conditions, as therein named. As appears from the record of its proceedings, the meeting was regularly organized and conducted, the result declared, and proper entries made in its minutes. The relator, having, as it claims, fully complied with the terms and conditions named in the resolution entitling it to a portion of such bonds, now asks the supervisors to issue and deliver them accordingly, which the latter refuse to do upon several grounds, the sufficiency of which this court is now called upon to consider and determine.

It is contended, *first*, that the written statement filed with the town clerk, upon which the election was called, though purporting, on its face, to be regular, and to be signed by the requisite number of freeholders of the town, did not, in fact, contain such number, because some of the persons signing the same were not, at the time, legally such freeholders; and, *secondly*, that the clerk only posted notices of the election in three, instead of five, public places in the town; and to support these positions, the alleged facts are sought to be established by proof *dehors* the

minutes kept by the clerk, and authenticated and filed as required by Gen. St. c. 10, §§ 19, 23.

Section 16 provides that "special town meetings may be held for the purpose of electing town officers to fill any vacancies that occur, also for the purpose of transacting any other lawful business, whenever the supervisors, town clerk, and justices of the peace, or any two of them, together with at least twelve other freeholders of the town, file in the office of the town clerk a written statement that a special meeting is necessary to the interests of the town." Section 17 makes it the duty of "the town clerk with whom such statement is filed, as required in the preceding section, to record the same, and immediately cause notice to be posted up in five of the most public places in the town, giving at least ten days' notice of such special meeting." Section 18 prescribes the character of the notice, and the succeeding sections relate to the mode and manner in which the meeting shall be organized, and its proceedings conducted, etc.

It will be observed that these special town meetings may be called and held for the purpose of electing any town officers to fill vacancies, and to transact any other lawful business; and the question arises whether, after a meeting has been held under a sufficient notice, properly specifying the business to be done, and a decision upon the subject-matter submitted has been reached, and the result declared, and made a matter of record, any officer of the town upon whom the duty is imposed of doing some specific act, in execution or in consequence of such decision, can legally refuse so to act, on the ground of an erroneous decision of the town clerk in determining upon the freehold qualifications of any of the signers to the written statement filed in his office, and upon which he acted in making the call—especially when, as in this case, the statement shows upon its face that each signer avers himself to be a freeholder of the town, and nothing appears to the contrary.

Suppose such meeting had been called and held to fill a

vacancy in the office of town treasurer, and, as the result,. A was duly declared elected, and a proper record made of the fact, could the town clerk excuse himself for not performing the duty imposed by section 32, in regard to giving notice of such election to the person so declared elected,. on the ground that he had erred in his decision upon the character of the written statement, and in calling the meeting? Or could the supervisors, for the same reason, decline to act upon the official bond of such treasurer elect, as required by sections 38 and 39 of the same chapter? Such a position, in our judgment, would be clearly untenable; and it makes no difference that the subject-matter of the election relates to an issue of bonds, instead of the election of an officer, as the rule must be the same in both cases.

The power to call a special town meeting is vested, by the statute, solely with the town clerk. Upon that officer the duty is imposed of making a call whenever the requisite written statement provided by section 16 is filed in his office. Whether it is such a statement as is therein provided, is a matter alone for him to determine, in the honest exercise of his best judgment upon the information before him, and such as may lawfully be presumed to be within his reach and possession. The statute, doubtless, selected him as the most fit person to be entrusted with the exercise of this power, because his official relations with the town and its citizens are necessarily such as would likely well qualify him for an intelligent and impartial discharge of the duty imposed. When, therefore, as in the case at bar, the statement so filed is genuine, and correct in form, and there is some evidence, presumably at least, before the officer, calling for the exercise of his judgment, and nothing appears to affect the integrity of his conduct or the honesty of his decision, his determination in the matter is final and conclusive, except upon a review by some competent tribunal, in a direct proceeding authorized by law. Especially must this be the case as against town officers occupying the

position of the respondents herein, after the electors have acted upon the call and notice without question. *Com'rs of Knox Co.* v. *Aspinwall*, 21 How. 539 ; *Bissell* v. *City of Jeffersonville*, 24 How. 287 ; *Evansville, etc., R. Co.* v. *Evansville*, 15 Ind. 395 ; *Martin* v. *Mott*, 12 Wheaton, 19 ; *Philadelphia & Trenton R. Co.* v. *Stimpson*, 14 Peters, 448. Whether any provision exists, under our laws, for a review in a case of this kind need not be considered, as the question is not now before us.

In reference to the second point, as it is not clearly and affirmatively shown whether the notices of election were posted in three or five places, it must be presumed that they were properly posted in accordance with the general presumption in favor of the right performance of official duty, though it be conceded that the alleged omission is not one covered by the decision in the case of *Taylor* v. *Taylor*, 10 Minn. 107.

That the town had the requisite legislative authority, under the act in question, to aid the construction of the relator's railroad, by providing, in the manner it did, for an issue to the company, as a bonus, of the designated amount of bonds, and to fix upon the terms and conditions of their issue, is unquestioned. *Davidson* v. *Com'rs of Ramsey Co.*, 18 Minn. 482.

The adoption of the resolution created a statutory and legal obligation against the town, in favor of the company therein named, to issue to it the amount of bonds therein provided, upon the performance of its conditions and on compliance with its terms by the latter, and the supervisors were authorized and directed to do the ministerial duty of executing and delivering the bonds whenever the conditions were fulfilled; and this was the extent of their authority. No formal acceptance nor written agreement was required of the company to give validity and effect to the resolution. It was in the nature of a standing offer, which the company was at liberty, at any time before

it was rescinded or withdrawn, to avail itself of, by entering upon the construction of the road, and complying with the terms and conditions of the resolution, in the manner and within the time therein specified. By beginning the building of the road in 1870, the company secured to itself the right to go on and comply with the conditions of the resolution, and to insist upon the observance of its obligations on the part of the town.

The resolution, in terms, authorized and directed the issue of bonds to the amount of $4,000, etc., " one-half of said bonds to be delivered to said company whenever it shall have graded and bridged its road from the city of Mankato for twelve miles in a southerly direction, and the other half to be delivered when the said railroad is completed to Wells, Faribault county, the iron laid, and the cars running thereon, provided that said last instalment of bonds shall never be delivered, unless said thirty-nine miles of railroad is so completed before the first day of August, 1872." The road was not so completed before August 1, 1872, and hence no claim is made to the last-named instalment of bonds ; and as the company did not finish the requisite amount of grading and bridging to entitle it to the first-named instalment, until after that period, it is insisted that it has no legal right to demand and receive that instalment.

As respects relator's obligation, if any, under the resolution, the question presented is not analogous to that arising out of a contract containing mutual and dependent covenants, each of which is the consideration for the other. The relator here assumed no obligation whatever in reference to the construction of any part of the road, or the time within which it should be done. The proposed aid on the part of the town was a mere gratuity, intended as an inducement to the building of the road, and having, as the sole consideration for its support, the public benefit expected to result from its construction. In making the gift, the town annexed

thereto certain conditions precedent, the performance of which by the company was requisite to enable it to assert any right to it whatever. It must be presumed that all the conditions intended to be imposed were fully specified and expressed in the resolution. As to the last-mentioned instalment of bonds, the time of completion is specifically named as one of the conditions, whereas nothing is said about the time within which the work of grading and bridging was required to be done, nor is there anything in the resolution indicating that the company had ever bound itself to do such work within any specified period. The legal effect of the offer contained in the resolution was that the company should be entitled to receive a certain amount of bonds whenever it should do certain grading and bridging; and if it should complete its road within the prescribed time, it should receive another amount.

The other questions raised upon the argument have been fully considered and decided in the case of *State, ex rel. Central Railroad Co.*, v. *Town of Clark*, (*ante*, p. 422,) which was submitted at the same term.

Ordered that a peremptory writ issue, as prayed for by the relator.[1]

[1] Applications for like writs by the same relator against the supervisors of the towns of Beauford and Mankato, respectively, in the same county of Blue Earth, were argued and submitted by the same counsel at the same time with the foregoing case, and with the same result.