NEIL CURRIE and another *vs.* J. A. PAULSON and others.

June 5, 1890.

**Change of County-Seat— Petition — Determination of County Board as to Signatures.**—Where the board of county commissioners, in accordance with the provisions of Laws 1889, *c.* 174, inquire into and determine what, if any, signatures to a petition for the removal of a county-seat should be deducted therefrom, and file their certificate thereof, and, according to such certificate, there still remain on the petition sufficient names to authorize the ordering of an election, it becomes the duty of the county auditor to make such order; and the election held in pursuance thereof will not be void because of any error or mistake of the board in determining, upon the evidence before them, what signatures were improperly on the petition.

**Same—Effect of Determination.**—The determination of the board in that regard, at least in the absence of fraud, is conclusive.

Appeal by the contestants, Neil Currie and Nick Weber, from a judgment of the district court for Murray county, *Perkins,* J., presiding.

*H. C. Grass* and *Geo. W. Wilson,* for appellants.

*P. P. Smith, B. H. Whitney, Lorin Cray,* and *J. L. Washburn,* for respondents.

MITCHELL, J.[1]   This is an appeal from the decision of the district court in a proceeding instituted to contest the validity of a special election, held pursuant to chapter 174, Laws 1889, upon the question of changing the county-seat of Murray county.   The case is brought here upon the findings of the trial court, and the only question is whether these findings support the conclusions of law.

The original petition filed with the auditor was in due form, and purported to be signed by what would be, under any construction of the act, the requisite number of legal voters of the county, and was accompanied by the required affidavits.   The county board, having, at a special meeting duly held for that purpose, proceeded to inquire into and determine the matters submitted to their determination by

[1] Vanderburgh, J., took no part in this case.

the second section of the act, and having concluded their inquiries, made, signed, and filed in the office of the county auditor a certificate that all the signatures to the petition were genuine, that all of the persons who signed it were at the time legal voters of the county, and that all of the signatures were attached within 60 days preceding the filing of the petition in the auditor's office. Upon the filing of this certificate, the auditor, as required by law, made and filed an order fixing the time for holding the election, which was held accordingly, and at which the requisite majority of the legal voters voted in favor of the proposed change of location of the county-seat. No fraud on the part of the county board is charged or found, but the contestants claim that it appears that 256 persons who signed the petition for the change of county-seat subsequently signed and presented to the county board a remonstrance against the change; that this was equivalent to their withdrawing their names from the petition, and therefore the county board should have stricken them off, and not counted them; and that, with these names deducted, the number remaining would have been insufficient to authorize ordering an election. Put in plain words and short form, the contention is that, upon the evidence before them, the board came to a wrong conclusion as to the number of names that should have been stricken from the petition, and because of that error the election is void, notwithstanding that, upon their determination as made and filed, and a comparison of the petition with the number of votes cast at the last general election, the auditor was authorized and required to make an order for the special election.

The act of 1889, in relation to the removal of county-seats, has few equals, even in our statutes, as examples of crude legislation; and we deem it wise to confine ourselves strictly to the questions necessary to be decided in each case as they arise, hoping that the law may be amended before either the people or the courts will be further troubled in attempting the difficult task of construing or reconciling its provisions. Without passing upon the correctness of any of the premises assumed by contestants, or deciding for what causes, occurring before the election itself, an election may on contest be held void, we are clear that (at least in the absence of fraud) the cer-

tificate of the county board as to what signatures, if any, are improperly on the petition, is final and conclusive; and that if from that certificate, as made and filed, it appears that there remain on the petition the required number of names, it is the duty of the county auditor to make his order for the election, and that an election held in pursuance thereof will be valid, notwithstanding any mistake or error committed by the board as to the facts submitted to their determination regarding the names improperly on the petition. In the very nature of things, the determination of the board on this matter must be final and conclusive. It was certainly not contemplated, and contestants do not claim, that the court upon contest could proceed on new evidence to try *de novo* the question as to the genuineness of signatures, or the qualification of the signers; for if so the election might be held void although the county commissioners decided rightly upon the evidence before them. If the court is to review the determination of the commissioners at all, it must be by attempting to put itself in their place, and consider how they ought to have decided upon the evidence which they had before them. But the law makes no provision for preserving this evidence, or making up any record of it. If, as will often be the case, the evidence is oral, there is no possible way of ascertaining what the evidence before the board was. This difficulty is illustrated by the present case, in which the trial judge assumes to find what certain witnesses swore to before the board.

There are manifest reasons why the determination of the board of commissioners as to these facts should be final. It is the vote of the electors at the election, and not the signatures to the petition, which determines the location of the county-seat. The main if not sole purpose of requiring the petition in favor of a change before ordering an election is to save the public from the expense, loss of time, and excitement incident to such an election, unless there is a reasonable probability that the required majority of electors will vote for the change. To go back of the action of the county board, and reverse their determination as to these facts, after the election is passed and the change carried by the popular vote, would certainly subserve no good purpose.

Our decision is confined to the facts of this case, where the petition was sufficient on its face, and the matters in relation to it submitted by the act to the determination of the county board were regularly and properly before them for their action.   Our conclusion is that, even if the findings of the trial court show all that contestants claim for them, it would constitute no ground for avoiding the election. We might remark, however, that it is more than doubtful as to whether it appears from the findings that there was any proof before the county board that any of those who signed the petition had withdrawn, or attempted to withdraw, their signatures, by signing a remonstrance against the proposed change.   The only thing on that question was the so-called "remonstrance" itself; and, while the act refers to remonstrances, and assumes to impose certain restrictions upon their presentation, yet we fail to discover that they amount to anything, or have any office to perform.   They are not made evidence of anything; and, as the county board has no discretion in the matter of the removal of the county-seat, it is difficult to see what effect a remonstrance can have, one way or the other.

Judgment affirmed.