(86 N. W. Rep. 973.)

---

STATE *ex rel* ROBT. J. LAIRD *vs.* JOHN GANG, *et al.*

Opinion filed June 15, 1901.

**Petition for Organization of Civil Township—Sufficiency—Reviewed.**

The board of county commisioners having found that a certain petition for the organization of a civil township containing the requisite number of legal voters, and having acted thereon by taking the necessary steps to organize such township, *held,* that the question as to the sufficiency of such petition is not open to judicial investigation in mandamus proceedings to compel the calling of an election for school officers in such township. Following State v. Langlie, 67 N. W. 958, 5 N. D. 594.

### School Township When Embraces Civil Township.

> Upon organization into a civil township of a portion of the terri-
> tory comprising a school township corporation, *held,* construing
> § § 658, 659, Rev. Codes, that such civil township continues for school
> purposes as a part of such school township corporation until segre-
> gated therefrom by the commissioners and county superintendent
> of schools, upon petition of the voters.

Appeal from District Court, Towner County; *Morgan, J.*

Application by Robert J. Laird for a peremptory writ of man-
damus to compel John Gang, as county superintendent of schools to
call an election in Greenfield township for the purpose of electing
school officers. From a final judgment awarding the writ defendant
appeals.

Reversed.

*Brennan & Kennedy,* for appellants.

Sections 35 and 36, Chap. 62, Laws of 1890, being § § 658 and
659, Rev. Codes, were construed by the state superintendent so that
school districts organized prior to the passage of Art. 3, which con-
sisted of more than one congressional township, are not affected by
§ § 35 and 36, and that to become separate organizations, compliance
must be made with the provisions of the law for subdivisions of dis-
tricts. Section 35 does not intend that every civil township in the
state shall be a distinct school corporation, but only such as had no
previous school organization. This construction by the state super-
intendent is a practical construction of the law. *Scanlon* v. *Childs,*
33 Wis. 663; *State* v. *Alabama,* 142 U. S. 615. The word 'code' as
substituted in the revision of 1895 for the word 'act' as used in the
original act, does not render the Revised Codes a new enactment.
The change of the word was made to harmonize the language with
the general body of the law. A change in the phraseology of a
statute made by means of a general revision of the entire body of
the law cannot be regarded as indicative of a design and purpose on
the part of the legislature as when the change is made by direct
amendment. *Hugo* v. *Miller,* 52 N. W. Rep. 381; Sutherland on
Statutory Construction, § 256; *State* v. *Morehouse,* 5 N. D. 411;
*Gull River Lumber Co.* v. *Brock,* 73 N. W. Rep. 430. Repeals by
implication are not favored. *Walcott Township* v. *Skauge,* 6 N. D.
382; *Braun* v. *State,* 49 S. W. Rep. 620; *Comer* v. *State,* 29 S. E.
Rep. 501. A civil township does not consist of mere area. Until an
election is held at the time fixed by law the organization of the
school township is not complete. *School District* v. *Wallace,* 75 Mo.
App. 317; *Dickey* v. *Hurlbut,* 5 Colo. 343; Melvin's Case, 68 Pa.
333; Beach on Corporations, § 384; McCreary on Elections, § 141.

*Newton & Smith* and *H. G. Middaugh,* for respondents.

Appellants, in preparing their abstract, have not complied with
Rule 13. The abstract does not abridge the testimony, but gives it
in full by question and answer, and with all the deadwood or ver-

biage perpetrated in its production in the District Court. *Farmers and Merchants Bank* v. *Davis*, 8 N. D. 83. There was a judgment entered in this action that was appealable. A demurrer was overruled, and this order was appealable. § 5626, Rev. Codes. The appeal in this case is from the judgment, and from all orders against the defendant prior to judgment. The appeal is duplicitous and bad. *Amer. Etc. Co.* v. *Gurnee*, 38 Wis. 533, *Anderson* v. *Hultman*, 80 N. W. Rep. 165; *Hackett* v. *Gunderson*, 47 N. W. Rep. 546.

Prior to the school law of 1883, school corporations were organized as school districts. The law of that year, Chap. 44, page 66, Laws of 1883, took away the right to organize a school corporation except as a school township, § 65, page 91. A law must be understood as beginning to speak at the moment it takes effect and not before. If passed to take effect upon a future day, it must be construed as passed on that day, and ordered to take immediate effect. *Rice* v. *Ruddiman*, 10 Mich. 125; *Charles* v. *Lamberson*, 1 Clark (Iowa) 442; *Price* v. *Hopkins*, 13 Mich. 318; Sutherland on Statutory Construction, § 107; *Guillotel* v. *Mayor*, 87 N. Y. 441. This contention does not conflict with the ruling in *Merchants National Bank* v. *Braithwaite*, 7 N. D. 358; *Osborne* v. *Lindstrom*, 9 N. D. 1. There has never been sufficient action under the construction contended for by appellants to effect a practical construction of the law. *Ewing* v. *Ainger*, 56 N. W. Rep. 767; *Thomas* v. *Collins*, 58 Mich. 64; *Swartwout* v. *Railway Co.*, 24 Mich. 389; *People* v. *Mahaney*, 13 Mich. 482; *People* v. *Wands*, 23 Mich. 385. A statute having amendatory effect by implication to repeal inconsistent acts is not in conflict with the constitution because not re-enacting and passing at length the acts so altered and amended by implication. *Ripley* v. *Evans*, 87 Mich. 217, 232; Sutherland on Statutory Construction, § 137, 138; *State* v. *Moore*, 67 N. W. Rep. 876; 9 General Digest, page 4186; *Mack* v. *Jastro*, 58 Pac. Rep. 372, 126 Cal. 130; *Murdock* v. *City*, 20 Wall. 590; *Pierpont* v. *Crouch*, 10 Cal. 1015; *State* v. *Bird*, 15 Cal. 295; *State* v. *Conkling*, 19 Cal. 501; *Charnock* v. *Rose*, 70 Cal. 189, 1 Pac. Rep. 625; *Fisk* v. *Henarie*, 142 U. S. 459, 12 Sup. Ct. Rep. 207; *King* v. *Cornell*, 106 U. S. 395, 1 Sup. Ct. Rep. 512; *District* v. *Hutton*, 143 U. S. 18, 12 Sup. Ct. Rep. 369. Section 658 of the Rev. Codes is the law on the subject and speaks from January 1st, 1896. An amendatory act takes effect from the time of its passage and has no retroactive effect in the absence of an express intention to the contrary. In re Miller, 110 N. Y. 216; *Reid* v. *Albany*, 128 N. Y. 364; *Ely* v. *Holton*, 13 N. Y. 595; *Moore* v. *Mausert*, 49 N. Y. 332; *Gibbs* v. *Queen Ins. Co.*, 63 N. Y. 114, 20 Am. Rep. 513; *Goillitel* v. *Holton*, 87 N. Y. 445. The re-enactment creates anew the rule of action, and even if there was not the slightest difference in the phraseology of the two, the latter alone would be referred to as the law, and the former stands to all intents as if expressly repealed. *People* v. *Tisdale*, 57 Cal. 104; *State* v. *Hill*, 20 N. W. Rep. 196, 32 Minn. 275. A statute amending a former act operates as to matters thereafter occurring precisely as

if the amendatory section had been added to the prior act at the time
of the latter's adoption, and the two must be considered together and
as one statute. *Holbrook* v. *Nichols,* 36 Ill. 131; *McEwen* v. *Den,*
24 How. 242, 16 L. Ed. 672; *Parsons* v. *Wayne Co. Circuit Judge,*
37 Mich. 207. Qualifying words and phrases should be confined
to their next antecedent. *Cushing* v. *Warwick,* 9 Gray 382; *Queen*
v. *Lowell,* 140 Mass. 106; *Dearborn* v. *Brookline,* 97 Mass. 469;
*State* v. *Conklin,* 34 Wis. 31. A later statute covering the same sub-
ject matter and embracing new provisions operates to repeal the
prior act, although the two acts are not in express terms repugnant.
*People* v. *Jehne,* 105 N. Y. 182, 195; *Norris* v. *Crooker,* 13 How.
429; *Bartlett* v. *King,* 12 Mass. 537; *U. S.* v. *Tynen,* 11 Wall. 88;
*Heckman* v. *Pinckney,* 81 N. Y. 211; *People* v. *Co.,* 98 N. Y. 67;
*King* v. *Cornell,* 106 U. S. 60; *Smith* v. *Board,* 35 N. W. Rep. 383;
*Giddings* v. *Cox,* 31 Vt. 604; *Bartlett* v. *King,* 12 Mass. 537; *Mason*
v. *Waite,* 1 Pick. 452; *Goddard* v. *Boston,* 20 Pick. 407. What the
legislature's intent was can be derived only from the words used.
The spirit of the act must be gathered from the words of the act,
not from conjectures aliunde. *Gardner* v. *Collins,* 2 Peters 93; *Ben-
ton* v. *Wickwire,* 54 N. Y. 226; *McCluskey* v. *Cromwell,* 11 N. Y.
593; *Thornley* v. *United States,* 113 U. S. 310; *Brewer* v. *Blougher,*
14 Peters 178, § 2682, Rev. Codes. The organization of the town
of Greenfield was not open to collateral attack. The county commis-
sioners was the board established by law to pass upon the questions
raised, and they having so done, the question was not open to inquiry
in this proceeding. *State* v. *Langlie,* 5 N. D. 594; *State* v. *Super-
visors,* 23 Minn. 521; *Ormsbee* v. *Piper,* 82 N. W. Rep. 36; *Dickey*
v. *Taft,* 55 N. E. Rep. 318, 175 Mass. 4.

FISK, J. This is an appeal from a judgment of the District Court
of Towner county, directing the issuance of a peremptory writ of
mandamus to compel the defendant, as county superintendent of
schools, to call an election in Greenfield township for the purpose of
electing school officers, pursuant to § 671, Rev. Codes. The facts,
briefly stated, are that Towner county was organized on or about
the 6th day of November, 1883, and during the same year, or the
following year, was divided into school townships. Congressional
township 160, range 68, together with three other congressional
townships, was organized into one school township, under the name
of "New City School Township." In April, 1895, township 160
range 68, was attempted to be organized into a civil township, and
the relator bases his claim to a writ upon the proposition that, by
the organization of said township into a civil township, said terri-
tory *ipso facto* became a distinct school township corporation, and
hence that it became the duty of the county superintendent of schools
to call an election, etc. New City school township was permitted to
intervene, and the contention of the defendant and intervener is—
First, that the territory designated as Greenfield civil township was
not legally organized into a civil township; and, second, conceding

that it was so organized, that it did not *ipso facto* become a distinct school corporation; that certain steps which were not taken were required by law to be taken in order to complete such organization; and hence, that it was in error to issue such peremptory writ of mandamus.

We are required by this appeal to review the entire case, but, before considering the merits, we will first dispose of a preliminary question of practice which is raised by counsel for respondent. A motion was made to dismiss the appeal for duplicity. The notice of appeal states, in substance, that appellants appeal from the judg- ment, and from all orders made by the District Court prior to said judgment. The record discloses that numerous orders were made prior to the entry of final judgment, including an order denying a motion to quash the alternative writ, and also an order over-ruling the demurrer to the complaint or affidavit upon which the altenative writ was issued; and respondents argue that by attempting to appeal from the judgment, and also from such orders, the appeal is bad for duplicity. This point would be well taken if said orders were appealable, and the time for appeal from the same had not expired. In the case of *Prondzinski* v. *Garbutt,* 9 N. D. 239, 83 N. W. Rep. 26, this court had occasion to refer to this subject, and numerous authorities are there collated holding such double appeals bad. The order over-ruling the demurrer was, of course, appealable, but the same was made and served upon defendant's counsel in July, 1899, and the time for appeal therefrom had therefore long since elapsed when this appeal was taken, and, the other orders not being appealable, we must overrule said motion.

The record presents a great mass of objections, exceptions, and so-called "assignments of error"; but in disposing of the case on the merits we do not deem it necessary to notice each of them, but shall confine the opinion to the two propositions above referred to, which to our minds are the vital questions involved.

First, we will consider the question as to the incorporation of Greenfield civil township; for if such township was never legally organized as a civil township, and appellants are permitted to raise such question in this proceeding, then the judgment below was erroneous. Respondents contend that it was organized in 1895, under the provisions of Chap. 10 of the Political Code, entitled "Township Organization," as found in Comp. Laws, § 704 et seq. Section 704 reads: "That whenever a majority of the legal voters of any congressional township in this territory containing twenty-five legal voters petition the board of county commissioners to be organized as a town under this article, said board shall forthwith proceed to fix and determine the boundaries of such new town and to name the same," etc. Section 706 provides for the naming of such townships; and § 707 provides as follows: "The county commissioners shall thereupon make out notices designating a suitable place for holding the first town meeting in each town, which shall be holden within twenty days after such town is organized," etc. From the

foregoing language it is apparent that the township becomes organized before the election of its officers. It precedes such election. Counsel for appellants cite numerous authorities holding that the election of officers is a part of the organization of the town, but it will be found upon investigation that each of these cases arose in states having radically different statutes than this state, and are therefore not in point. Pursuant to the provisions of our code above quoted, a petition asking for the organization of this township as Greenfield civil township was presented to the board of county commissioners, and the same was indorsed "Approved and allowed January 9, 1895," by the chairman of the board of county commissioners; and in the commissioner's record, which was introduced in evidence, we find the following entry: "January 9, 1895. Petition of Robert J. Laird and others, asking that township 160, range 68, be set apart and organized as a civil township, is hereby granted, and the county attorney is requested to prepare the necessary papers and instructions to carry this order into force and effect, the said civil township to be known as 'Greenfield.' Carried." And in such record, under date of April 1, 1895, is the following: "Upon motion, the following resolution was adopted: 'Whereas, a majority of the legal voters of township 160, range 68, a congressional township containing twenty-five legal voters, having petitioned the county commissioners to organize as a town under Art. 1, Chap. 10, of the Comp. Laws of 1887, resolved, that said congressional township 160, range 68, be, and the same is hereby, set apart and declared to be a town under the provisions of said law, and shall be designated by the name of the town of "Greenfield." The county auditor is hereby authorized and directed to make out three notices for holding the first meeting, and the residence of R. J. Laird, in said township, is hereby designated as the place for holding said first town meeting, and the time is hereby designated as Thursday, April 25, 1895, at 2 o'clock p. m.; and the auditor is further directed to deliver said notices to the sheriff of said county, who shall cause the same to be posted in said township not less than ten days before the 25th day of April, 1895.'" Said record is signed, "E. E. Priest, chairman of the board of county commissioners," and the same is attested by "D. K. Brightbill, county auditor." It appears by the testimony of Robert J. Laird, the relator, that said township of Greenfield had a board of officers and was transacting business as a civil township for some time prior to the commencement of these proceedings. Appellants attempted to prove that said township was never legally organized as a civil township for two reasons: First, that those petitioning the board of county commissioners were not all electors therein. This evidence was promptly objected to at all stages of the trial, upon the ground that the organization of said township was not open to collateral attack in this proceeding; and, further, that the county commissioners was the board established by law to pass upon such questions, and, they having done so, that the question was not open to inquiry in this proceeding. We think these objections were

well founded, and that all of this class of testimony was irrelevant and immaterial. In the case of *State* v. *Langlie,* 5 N. D. 594, 67 N. W. 958, this court held "that after a county seat election has been ordered and held, and a sufficient vote is cast in favor of some one place to work a relocation of the county seat, the question whether the petition presented to the board of county commissioners praying that such election be held was signed by a sufficient number of voters is not open to judicial investigation, when the board has found that it was so signed." To the same effect, see *State* v. *Supervisors,* 23 Minn. 521; *Ormsbee* v. *Piper,* (Mich.) 82 N. W. Rep. 36; *Currie* v. *Paulson,* (Minn.) 45 N. W. Rep. 854; *Ellis* v. *Karl,* 7 Neb. 381; *Bennett* v. *Hetherington,* 41 Ia., 142; *Baker* v. *Supervisors,* 40 Ia. 226. Having reached the conclusion that the action of the board of county commissioners in receiving and acting upon the petition for the organization of this township is conclusive in this proceeding as to the qualifications and requisite number of petitioners, it follows that appellant's contention that said civil township was not legally organized must be overruled.

Counsel for appellants next urge that, conceding the due organization of such civil township, Greenfield school township was never completely organized, and hence that it was error to require the superintendent of schools to call an election therein for school officers. Their contention is that before such school township can be deemed completely organized the boundaries of the old school township must be rearranged by the commissioners and county superintendent of schools, pursuant to a petition to be filed with them, signed by a majority of the voters of each school corporation whose boundaries will be affected thereby, in accordance with § 660, Rev. Codes. On the other hand, respondent's counsel argue that by the organization of township 160, range 68, into a civil township, such township was, by force of § 658, Rev. Codes 1895, *ipso facto* segregated from said New City school township, and that by operation of law the same became a distinct school corporation, without any action on the part of the commissioners and superintendent of schools. A solution of this question necessitates a construction of several sections of school law, as found in Chap. 62, Laws 1890, and the same sections as revised in the Code of 1895. Section 35, Chap. 62, Laws 1890, reads: "Each civil township in every county in the state, not organized for school purposes under the district system at the taking effect of this act, shall be and is hereby constituted a distinct school corporation, and whenever hereafter in any county a civil township shall be organized, it shall from and after such organization as a civil township, be and constitute a distinct school corporation, except as otherwise specially provided in this act." Greenfield township, at the taking effect of said act, was not a civil township, but it became such in 1895, and, not being organized for school purposes under the district system, it at that time came squarely within the

provisions of said § 35. This section deals—First, with civil townships already organized; and, second, with civil townships thereafter to become organized. The excepting clause ·at the end of the section, as we construe the same, has reference to other provisions of the school law specially providing when civil townships, either already organized or to become organized, shall not constitute a distinct school corporation. Section 42, which is the same as § 664, Rev. Codes, provides that if a civil township having less than 15 persons of school age residing therein, by reason of the irregular course of natural boundary, contains less than 12 sections, it shall constitute a part of an adjacent school district. Section 39 provides that if a part of any school corporation, having not to exceed ten children of school age residing therein, is, by reason of natural obstacles, separated from the other part of such corporation, so as to prevent children from attending school in such other part, the part so separated may be annexed to an adjoining corporation. Again, by § 40, it is provided that a town or village may be annexed to the adjacent school corporation which includes such other portion, and the part thus annexed shall constitute a part of such adjacent corporation. These in our opinion are the special provisions referred to in the excepting clause contained in § 35, being § 658, Rev. Codes. We are aware that this construction is not contended for by counsel upon either side, but it seems to us to be the only reasonable construction that can be placed upon the language used. If we are correct in this, then it follows that Greenfield civil township, upon its organization in 1895, were it not for § 36, became a distinct school corporation, by force § 35 of said law.

But § 36 provides as follows: "Each school township in every county in the state which after the taking effect of this act consists of territory not organized into a civil township, shall be and remain a distinct school corporation: provided, whenever such school township or any part thereof shall be organized into or annexed to a civil township, such civil township shall thenceforth constitute a distinct school corporation; provided, further, that nothing in this act shall be construed to alter the boundary lines of any school township organized prior to the passage of this act except upon petition as hereinafter provided." New City school township was organized prior to the passage of said act, and at the taking effect of said act consisted of territory not organized into a civil township, and hence said section applies thereto, and upon the organization of Greenfield civil township, in 1895, the same would have become a distinct school corporation, were it not for the proviso in the latter part of said section. This proviso is explicit to the effect that nothing in the act shall be construed to alter the boundary lines of any school township organized prior ˙to the passage of said law, except upon petition, etc. It was the evident intent of the legislature by this law to establish a uniform school district system, each civil township already organized or thereafter to be organized to constitute a distinct school corporation, with certain ex-

ceptions heretofore referred to; but it is also evident, when we construe § § 35 and 36 together, as we must, that as to school townships. organized prior to 1890 it was the legislative intent that no boundary lines should be altered except upon petition. Any other construction would render meaningless the proviso at the end of § 36.

Respondents contend, however, that Greenfield civil township became a distinct school corporation by force of the legislative declarations in § § 658, 659, Rev. Codes. We will now examine these sections to ascertain whether any change was made requiring a different construction than their predecessors. Section 658 is the same as § 35, except that it speaks from a later date. This section, like § 35, is however, general, and broad enough in its terms, standing alone, to constitute Greenfield civil township a distinct school corporation. But § 659 also applies, and must be construed with § 658. This section also speaks from a later date than its predecessor (§ 36, Chap. 62, Laws 1890), but we do not think the change brought about through the revision materially changes the legal effect of the law. It plainly provides that each school township which,. at the taking effect of the Code, consisted of territory not organized into a civil township, shall be and remain a distinct school corporation. New City school township, at the taking effect of the Code, consisted of some territory not organized into a civil township, and hence we think comes squarely within the above language, and therefore must remain intact as a distinct school corporation until Greenfield civil township is segregated therefrom by a petition, as provided in the next section. The latter portion of § 659 provides that nothing in that section shall be construed to alter the boundary lines of any school township organized prior to the passage of the Code. While this provision is vague and almost unintelligible, and while § § 658 and 659 are in almost hopeless conflict, still we believe the legislative intent, as gathered therefrom, was to require a petition by the voters in order to alter the boundary lines of existing school townsip corporations whose territory is not wholly within a civil township. Greenfield civil township never having been segregated from New City school township for school purposes by petition of the voters, as required by law, it follows that the application for a writ requiring the county superintendent of schools to call an election in Greenfield civil township should have been denied. The judgment of the District Court is reversed, and that court is directed to enter judgment in favor of the defendant and intervener, with costs of both courts. All concur.

MORGAN, J., being disqualified, FISK, J., of the First Judicial District, sat by request.