F. H. STOLTZE, on Behalf and for the Benefit of Himself and All Other Persons Mentioned in Paragraph 1 of the Complaint herein, v. P. SHERIDAN, S. H. Sleeper, and Gilbert Johnson, as Drain Commissioners of Renville County, North Dakota.

(148 N. W. 1.)

**Drain — house sewage — storm waters — incorporated city — petition — benefits — health of city — number of signers — public demand — sufficiency of petition.**

1. Even if a drain, the purpose of which is to take care of the house sewage as well as the storm waters of an incorporated city, may be constructed under the provisions of chapter 23, Rev. Codes 1905, as amended by chapter 93 of the Laws of 1907 and chapter 124 of the Laws of 1911, a petition which states that the said drain is "for the best interests of the city of M—— and a benefit to the health, convenience, and welfare of the people of said city," discloses a drain the principal benefits of which will accrue to such city, and in such a case the petition should be signed "by a sufficient number of the citizens of such municipality to satisfy the board of drain commissioners that there is a public demand" therefor, and where the petition is signed by at the most twenty persons, and the record discloses that there are 223 property owners in the municipality, no such public demand is shown.

**Purposes of drain in city — signatures of sufficient number of citizens — board of drain commissioners — public demand — authority of board — injunction after petition has been presented and survey ordered — not premature.**

2. Where among the leading purposes of a proposed drain are benefits to the health, convenience, and welfare of the people of any city or municipality, the signature of a sufficient number of the citizens of such municipality to satisfy the board of drain commissioners that there is a public demand for such drain is a jurisdictional prerequisite, and without such petition the board of drain commissioners has no authority to order a survey or to take any further steps in the matter, and an action for an injunction restraining any further proceedings is not premature which is brought after the petition has been presented and a survey had or ordered but before any other proceedings have been had under § 1821, Rev. Codes 1905.

Opinion filed June 5, 1914. On petition for rehearing July 7, 1914.

Appeal from the District Court of Renville County, *Leighton,* J.

Action to enjoin the construction of a drain. Judgment for defendants quashing a temporary injunction. Plaintiff appeals.

Reversed.

*Noble, Blood, & Adamson,* for appellant.

The petition in conformity with the statute, signed by the requisite number of citizens, is the foundation of the jurisdiction of the drain board to act. Alstad v. Sim, 15 N. D. 629, 109 N. W. 66.

Unless the petition conforms strictly to the requirements of the statute, the board is without jurisdiction. State ex rel. Bale v. Morrison, 24 N. D. 568, 140 N. W. 707.

And there is no presumption of jurisdiction. Bishop v. People, 200 Ill. 33, 65 N. E. 421; Seibert v. Lovell, 92 Iowa, 507, 61 N. W. 197; Morrow v. Weed, 4 Iowa, 77, 66 Am. Dec. 122; State ex rel. Utick v. Polk County, 87 Minn. 325, 60 L.R.A. 161, 92 N. W. 216; Richman v. Muscatine County, 77 Iowa, 513, 4 L.R.A. 445, 14 Am. St. Rep. 308, 42 N. W. 422; Laws 1911, chap. 125; Rev. Code 1905, §§ 1818, 1821, as amended by chap. 125, Laws 1911, 2771, 2781–2784, 2786; Laws 1907, chap. 93, §§ 1832, 1837.

The city council of an incorporated city is the only body that has power to construct a sewer within the city limits. Anderson v. Endi-

cutt, 101 Ind. 539; State ex rel. Utick v. Polk County, 87 Minn. 325, 60 L.R.A. 175, 92 N. W. 216.

After a petition is filed and the board has acted thereon, and has ordered a survey made, an action lies and an injunction may issue, and such proceedings are not premature. State ex rel. Dorgan v. Fisk, 15 N. D. 219, 107 N. W. 191.

*Geo. R. Robbins* and *Geo. A. Bangs,* for respondents.

It is wholly within the province of the inferior tribunals and their officers to decide questions as to the practicability of a proposed route for a drain and the question of the necessity for the drain, and, in the absence of fraud, such questions are not subject to review on appeal. 14 Cyc. 1045; State ex rel. Sullivan v. Ross, 82 Neb. 414, 118 N. W. 89; Tyson v. Washington County, 78 Neb. 214, 12 L.R.A.(N.S.) 354, 110 N. W. 634; Dodge County v. Arom, 61 Neb. 376, 85 N. W. 297; Chicago, R. I. & P. R. Co. v. Lake, 71 Ill. 333; Hoyt v. Brown, 153 Iowa, 324, 133 N. W. 905; Chandler v. Beal, 132 Ind. 596, 32 N. E. 597; Oathout v. Seabrooke, 159 Ind. 529, 65 N. E. 521; Boxersox v. Seneca County, 20 Ohio St. 496; Clark v. Teller, 50 Mich. 618, 16 N. W. 167; Brown v. Henderson, 66 Ark. 302, 50 S. W. 501.

An action in equity to obtain an injunction does not partake of an appeal; it is not a proceeding to correct errors. Hoyt v. Brown, 153 Iowa, 324, 133 N. W. 907.

The appellant can be granted relief only upon the theory that the board is without jurisdiction. Ibid.

If the petition is sufficient, the board acquired full jurisdiction. Edwards v. Cass County, 23 N. D. 555, 137 N. W. 580.

The petition states all the facts required by the statute. Sess. Laws 1911, chap. 125, p. 203; Hackney v. Elliott, 23 N. D. 386, 137 N. W. 433.

There cannot be at the same time, and in the same territory, two distinct municipal corporations, exercising the same powers, jurisdiction, and privileges. Edwards v. Cass County, supra; 1 Dill. Mun. Corp. 5th ed. § 354; 20 Am. & Eng. Enc. Law, 2d ed. 1150; Vallelly v. Park Comrs. 16 N. D. 30, 15 L.R.A.(N.S.) 61, 111 N. W. 615.

The drainage board is not a corporation; it is a mere department of the county created to perform a public function in the exercise of the police power. Reed v. Heglie, 19 N. D. 801, 124 N. W. 1127;

Soliah v. Cormack, 17 N. D. 396, 117 N. W. 125, affirmed in 222 U. S. 522, 56 L. ed. 294, 32 Sup. Ct. Rep. 103.

The powers of a city with reference to the construction of sewers is but cumulative. It still possesses the general power to construct sewers and to contract therefor and pay for same by general taxation. Pine Tree Lumber Co. v. Fargo, 12 N. D. 368, 96 N. W. 357; 4 Dill. Mun. Corp. 5th ed. 1465; Soule v. Seattle, 6 Wash. 315, 324, 33 Pac. 384, 1080; Stephens v. Spokane, 11 Wash. 41, 39 Pac. 266; Clark v. Des Moines, 19 Iowa, 221, 89 Am. Dec. 423.

The power to construct drains is in no sense a part of the usual power of town and county government, but is a special power for a given purpose, and may be conferred upon any person or body by the legislature. Martin v. Tyler, 4 N. D. 290, 25 L.R.A. 838, 60 N. W. 392; Bryant v. Robbins, 70 Wis. 258, 35 N. W. 545.

The law provides a method of constructing drains, whenever the same shall be conducive to the public health, convenience, or welfare. Aldrich v. Paine, 106 Iowa, 461, 76 N. W. 812.

Where the drain is for the benefit of a municipality, the petition must be signed by the citizens thereof. Soliah v. Cormack, 17 N. D. 401, 117 N. W. 125; Bryant v. Robbins, 70 Wis. 258, 35 N. W. 545; Muskego v. Drainage Comrs. 78 Wis. 40, 47 N. W. 11.

The questions here are as to the interpretation of the statutes, and the court will be governed by the legislative intent as evidenced by the language employed. Anderson v. Endicutt, 101 Ind. 539; Mason v. Detroit, G. H. & M. R. Co. 104 Mich. 631, 62 N. W. 989.

BRUCE, J. This is an appeal from an order vacating and setting aside a temporary injunction restraining proceedings for the creation of a sewer under the provisions of chapter 23, Rev. Codes 1905, as amended by chapter 93 of the Laws of 1907 and chapter 124 of the Laws of 1911.

The first and main question which is to be decided in this case is whether a drainage or sewerage system may be created under §§ 1818 and 1821, Rev. Codes 1905, which system the petition alleges "is for the best interests of the city (of Mohall) and a benefit to the health, convenience, and welfare of the people of said city," and which the record discloses is for the purpose of providing a drain which shall

take care of the sewage and house drainage of the city as well as its surface waters, without a compliance with the provisions of § 1821, which provides that "if among the leading purposes of the proposed drain are benefits to the health, convenience, or welfare of the people of any city or other municipality, the petition shall be signed by a sufficient number of the citizens of such municipality or municipalities to satisfy the board of drain commissioners that there is a public demand for such drain."

This, we believe, is a correct statement of the main issue, for although it is contended that the drain is a general agricultural health drain, and passes through agricultural lands as well as city property, it is quite clear from the record that its source is in the city as well as its real field of utility, and that its extension into the agricultural lands is for the purpose of an outlet merely. Even, however, if it were partly agricultural and partly urban, we do not think that the issues would be changed, and we are of the opinion that "a petition signed by a sufficient number of the citizens of the municipality to satisfy the board of drain commissioners that there is a demand for the drain" would still have been necessary, and that such petition was not obtained in the case before us. Section 1818, Rev. Codes 1905, provides that "water courses, ditches and drains for the drainage of sloughs and other low lands may be established, constructed and maintained in the several counties of this state whenever the same shall be conducive to the public health, convenience or welfare under the provisions of this chapter. The word 'drain' when used in this chapter shall be deemed to include any natural watercourse opened, or proposed to be opened, and improved for the purpose of drainage and any artificial drains constructed for such purpose."

Section 1821 provides that "a petition for the construction of a drain may be made in writing to the board of drain commissioners. If among the leading purposes of the proposed drain are benefits to the health, convenience or welfare of the people of any city or other municipality, the petition shall be signed by a sufficient number of the citizens of such municipality or municipalities, to satisfy the board of drain commissioners that there is a public demand for such drain. If the chief purpose of such drain is the drainage of agricultural, meadow, grazing or other lands, the petition shall be signed by at least

six or more freeholders whose property shall be affected by the proposed drain."

Section 2771, Rev. Codes 1905, provides among other things that "the city council shall have power to establish and maintain at any time a general system of sewerage for the city, in such manner and under such regulations as the city council shall deem expedient, and to alter or change the same from time to time as the council shall deem proper; provided, that no action shall be taken for the establishment of such system of sewerage except upon the affirmative vote of two-thirds of the members of the city council," etc. Section 2772 provides that "any city shall have power to create sewer, paving or water-main districts within the limits of such city, which shall be consecutively numbered." Section 2773 provides that "such sewer districts shall be of such size and form as the city council, after consultation with the city engineer, shall decide most practicable for the purpose of the drainage of such portion of such city as may be included in the respective districts as established by the city council."

It is quite clear to us that §§ 1818 and 1821 were enacted for the drainage of sloughs and other lowlands, and under the general police power of the state, and that §§ 2771, 2772, and 2773 were enacted to meet the express problems of cities and the added problem of house sewage, which is not to be found in the country. It is well established that where general words follow a specific enumeration, that these general words must be construed to apply to a class similar to that enumerated. Lewis's Sutherland, Stat. Constr. 2d ed. §§ 422–441. The "other lowlands," therefore, which are spoken of in § 1818, must mean lands which, even though found within the limits of incorporated cities, are in the nature of sloughs and as such injurious to the general health of the community. Sections 1818 and 1821, Rev. Codes 1905, in fact the whole of chapter 23, Rev. Codes 1905, relate merely to what may be termed water or surface-water drains, and have no relation whatever to a sewage and to a sewerage system, such as is generally maintained in cities and is evidently contemplated in the case at bar. There are cases where sloughs and swamps are found within the limits of incorporated cities, and § 1821 was enacted to cover such cases, but the act is limited by § 1818 to "the drainage of sloughs and other lowlands" and of sloughs and other lowlands alone.

However this may be, it is quite clear that the drainage project in the case at bar was primarily, if not solely, for the benefit of the people of the city, and that in no sense could it be held that its *chief* and only purpose was for the "drainage of agricultural, meadow, grazing, or other lands."

Being for the benefit, health, convenience, and welfare of the city, the petition was, in any view of the case and of the statutes, required to be signed by a sufficient number of the citizens of such municipality to satisfy the board of drain commissioners that there was a public demand for the drain. See § 1821. In the case at bar the petition was signed by only ten, or at the most twenty, persons, while the number of property owners of the city amounted to two hundred and twenty-three persons. This was not a sufficient showing of a public demand. The most limited definition of the term "public" that we can find is in the case of State v. Luce, 9 Houst. (Del.) 396, 32 Atl. 1076, 1077; 6 Words & Phrases, 5771. In this case the court says: "The term 'public' does not mean all the people, nor most of the people, nor very many of the people, of a place, but so many of them as contradistinguishes them from a few." See 6 Words & Phrases, 5771. Even if we take the most limited construction, we think that no one would contend that ten or twenty is not a "few" as compared with two hundred and twenty-three.

There can be no question that the drain or sewer was intended to provide for the house sewage as well as for the surface or storm waters of the city. This is conclusively shown by the surveyor's report, which, among the estimated items of cost, includes one septic tank, fifteen catch-basin, twelve manholes, one outfall abutment, and several thousand feet of drainpipe, and which throughout speaks of the system as a sewer, rather than a drainage, system.

It is also clear that whether primarily and principally a house sewer or not, its use is mainly confined to the limits of the city. It is true that it extends outside of the limits, but, to use the language of the engineer himself, "the benefits will be to the entire city of Mohall, North Dakota, and *may* include the southwest quarter and the south half of the southeast quarter of section 13, and the north half of the northwest quarter and the north half of the northeast quarter of section 24, twp. 161, range 84. The benefits will be *particularly to the* .

*health, convenience, and welfare of the residents of Mohall, North Dakota."* There is in fact in the petition no suggestion or claim that the system is for the benefit of any but the residents of the city, nor any request that it shall be made to benefit any others. So, too, the petition is signed by residents of the city only. See State ex rel. Bale v. Morrison, 24 N. D. 568, 140 N. W. 707. It is clear that in any event and in any view of the case the requirements of § 1821 should have been met and complied with, and it is equally clear that this was not done.

But it is contended that the action was premature. It is claimed that it was begun before the hearing under § 1821 could be had, and before the board could determine whether or not a public demand existed for the drain. It is claimed that under the statute the drain board determines whether or not a public demand exists, and that such determination, in the absence of an appeal, should be final.

We do not think that this is the case. It appears to be quite clear, indeed, that before any steps are taken whatsoever, the board of drain commissioners must be satisfied that there is the "public demand" which is mentioned in and which is made a prerequisite by §1821. Before this matter has been determined, the board, under the statute, has no right to cause the survey to be made, nor to take any steps in the matter. This determination, and a petition on which the determination may be legally had, is, we believe, jurisdictional. It is true that the concluding portion of § 1821 provides that "all persons whose land may be affected by any such drain may appear before the board of drain commissioners and fully express their opinions upon the matter pertaining thereto." We believe, however, that this hearing is contemplated after the filing of the proper petition, and the determining of the public demand, and the making of the survey, and not before, and relates to the benefits and the necessity, and not to the preliminary and jurisdictional "public demand." We are also cognizant of § 1822, which provides that "if upon such examination and survey, or upon the trial in the district court it shall appear that there was not sufficient cause for making such petition, or that the proposed drain would cost more than the amount of benefit to be derived therefrom, the board of drain commissioners shall deny the petition, and the petitioners shall be jointly and severally liable to such board for all costs and expenses

incurred in the proceedings to be recovered by such board by action."
We believe, however, that this clause refers to the value and necessity
of the drain, and not to the jurisdictional element of a public demand
therefor.

We are of the opinion that the trial court erred in dissolving the
temporary injunction, and that all further proceedings under the in-
valid petition should be enjoined and the injunction reinstated.    It is
so ordered.    The costs of the appeal will be borne by the defendant and
respondent.

## On Petition for Rehearing.

A petition for a rehearing has been filed in which the claim is made
that the finding of the commissioners as to the fact of a public demand
is final and conclusive, and cannot be attacked in the injunction pro-
ceedings.    The contention of counsel in short is that in such a case if
the commissioners choose to hold that two and two make six, or that
ten out of two hundred and twenty-three is a *number* in itself sufficient
to indicate a popular demand, or to make some other equally grotesque
holding, the public and the courts must sit idly by and see an expensive
election or proceeding carried on.    Such, we believe, never has been
and never will be the law.    A holding such as that above on the part
of a commission, though perhaps innocently made, is, in the eyes of
the law, equivalent to fraud, and in such cases no court will hold that
the exercise of discretion or of quasi judicial determination is bind-
ing.

We have carefully examined the cases cited by counsel for petitioner.
In none of them, however, are the facts similar to those in the case at
bar.    In the case of State ex rel. Little v. Langlie, 5 N. D. 594, 32
L.R.A. 723, 67 N. W. 958, for instance, the court merely held that
"after a county-seat election has been ordered and *held,* and a sufficient
vote is cast in favor of some one place to work a relocation of the county
seat, the question whether the petition presented to the board of county
commissioners praying that such an election be held was signed by a
sufficient number of voters is not open to judicial investigation when
the board has found that it was so signed."    It will be noticed that in
this case the election had been held and the popular opinion and de-

sires expressed.    In truth the very fact was shown by the election which the petition was intended to state, and that was that there was a desire for a change of the county seat.    This is the reason why the court held as it did.    This is plain from the language of the opinion itself.    It said: "We do not think that, *after an election has been held, and a sufficient vote has been cast in favor of a place to work a change of the county seat to such place,* the question whether the petition had upon it the requisite number of names is open to judicial investigation. While a sufficient petition is undoubtedly necessary, yet the question lies deeper than that.    What body is to settle this matter finally? This is the pregnant inquiry.    When we consider the nature of the question to be passed upon, the peculiar facilities that county commissioners living in close contact with the people have for reaching a correct result, and the enormous expense involved in a trial of that question in court, we are impelled to the conclusion that the decision of the board is final; *at least, after an election is had which demonstrates that the requisite number of voters were in favor of a change.* In the case before us it appears that the voters of Traill county were almost unanimous in their desire for a change, Caledonia receiving only 218 votes out of 1,882 votes cast on that issue.    The board is to receive the petition, is to pass upon its sufficiency, and is to order the election if satisfied that it is sufficient.    Here is a clear submission of this question of fact to the board for adjudication.    The statute contemplates that the board is to settle it one way or the other.    No other body is given jurisdiction over the matter.    It is left to the judgment of the board, to the end that the taxpayers shall not be burdened with the expense of an election unless there is a strong sentiment in favor of a change, and also to the end that, when there is a sufficiently widespread desire for a relocation to justify the expectation that the vote on the subject will accomplish something, and not prove futile, the citizens of the county may enjoy the right to vote on this issue.    We think such a question may be safely left to the final decision of the county commissioners of a county.    They are elected for a short term. They stand close to the people, and under such circumstances an abuse of the power is not to be expected.    If the power is abused, the attempt of the board will prove abortive, if the voters do not desire a change. The only consequence of their wrongful action will be the expense of

the election, so far as it relates to the special matter, which will be trifling, in view of the fact that the question is to be voted on at the general election, and in addition the increased excitement of the election owing to the additional issue before the voters for settlement. *These consequences are trivial as compared with the evils flowing from the doctrine that the question whether two thirds of the voters signed the petition is open to investigation after two thirds of the voters have declared in favor of a change of the county seat to another place, and so open to investigation for all time."*

In the case of State ex rel. Plain v. Falley, 8 N. D. 90, 76 N. W. 996, all that was held was that the duties of the secretary of state, in certifying the names of the legislative nominees to the auditors of the proper counties, were ministerial, and not judicial. It is plain that this case has no application to the one at bar. In State ex rel. Laird v. Gang, 10 N. D. 331, 87 N. W. 5, we merely have a case where the board of county commissioners refused to call an election for the organization of a civil township on the ground that the petition was not signed by a sufficient number of legal voters. In it they passed upon a question of fact as to whether the signers were electors or not. There was no evidence of abuse of discretion, and no suggestion of such an abuse of quasi judicial judgment as to in law amount to fraud. So, too, no real harm was done by, nor any infringement upon personal or property rights perpetrated, or money wasted, by the refusal to call the election. In the case of State ex rel. Cooper v. Blaisdell, 17 N. D. 575, 118 N. W. 225, is to be found a holding similar to that in State ex rel. Plain v. Falley, supra, and is merely that the secretary of state, in certifying the names of candidates for state offices to the auditors of the different counties, merely acts in a ministerial capacity. In the case of Greenfield School Dist. v. Hannaford Special School Dist. 20 N. D. 393, 127 N. W. 499, an attempt was made to attack the organization of a school district several years after its organization, on account of an alleged defect in the petition, after taxes had been levied for three years and a schoolhouse built, and bonds issued for $9,000. It was a case not only in which there was no showing of fraud or of that which was equivalent thereto, or of a gross abuse of discretion or of judgment, but one in which the doctrine of estoppel was and could be asserted. The case of School Dist. v. King, 20 N. D. 614, 127 N. W. 515, pre-

sents facts somewhat similar to those in the case at bar in that an injunction was sought to restrain the annexation of certain territory to a school district. In it, however, the court said nothing about the ultimate discretion of the board of education. It, on the other hand, expressly said that "the allegation of the complaint that the petition was 'falsely and fraudulently' presented to the board of education is not followed by any proof to substantiate that general allegation. This allegation, even if deemed sufficient, must fail as not substantiated by proof. The same is true of the allegation in the complaint that the petition is not signed by a requisite number of the legal voters of the territory attached to the village of Tower City for school purposes. As stated before, the defendants have shown *by undisputed testimony that every requirement of the statute was literally complied with.*" These are all of the cases cited from North Dakota. We have, in addition, carefully examined those cited from other states, and we make upon them exactly the same criticism that we do upon those cited from North Dakota. The cases referred to are Currie v. Paulson, 43 Minn. 411, 45 N. W. 854; Slingerland v. Norton, 59 Minn. 351, 61 N. W. 322; Tucker v. Lincoln County, 90 Minn. 406, 97 N. W. 103; State ex rel. Buck v. Ravalli County, 21 Mont. 469, 54 Pac. 939; Scarbrough v. Eubank, 93 Tex. 106, 53 S. W. 573.

The petition for a rehearing is denied.