TEUNIS SLINGERLAND *vs.* GEORGE A. NORTON, County Auditor.

Argued Nov. 22, 1894.    Affirmed Dec. 7, 1894.

No. 9018.

**The remedy in case of a defective petition to remove a county seat is by injunction.**

An elector and taxpayer has no adequate remedy at law for the insufficiency (not appearing on the face of the record) of a petition for the removal of a county seat under Laws 1889, ch. 174. The remedy, if any, is by injunction.

**"Voters" does not include women voting for school officers.**

Under this act, "the whole number voting at the last general election" is to be ascertained from the "poll lists." Women voting for school officers are to be excluded from the computation.

**"Majority" in the second clause of Laws 1889, ch. 174, § 1 means sixty per cent.**

The word "majority," in the second clause of the first section, is to be construed as meaning the majority required by the preceding clause, to wit, sixty per cent.

**Petitioner may withdraw his name, when.**

> Any signer has a right to withdraw his name from the petition at any time before the board of county commissioners completes its inquiry and determination in the matter of purging the petition committed to it by the statute.

**County Auditor to disregard such withdrawals.**

> But the statute does not contemplate that the county auditor may, because of subsequent withdrawals, arrest a petition, sufficient on its face when presented to him, on its way to the county commissioners, If the petition, when presented, is sufficient on its face, it is mandatory upon the auditor to make the order and give the notices requisite to bring it before the board of county commissioners.

Appeal by plaintiff, Teunis Slingerland, from an order of the District Court of Dodge County, *Thomas S. Buckham,* J., made June 27, 1894, dissolving a temporary injunction.

On May 16, 1894, there was delivered to the defendant, George A. Norton, county auditor of Dodge County a petition signed by 1,614 legal voters of that county addressed to the board of county commissioners praying that the county seat of that county be changed in the manner provided by Laws 1889, ch. 174 from Mantorville to Dodge Center, nine miles distant. The whole number of votes cast in that county at the proceeding general election was 2,482 as shown by the poll lists. Additional votes to the number of 184 were cast for school officers by women. On the same day Frank L. Willson presented to the auditor powers of attorney from 194 of the signers of the petition authorizing and directing him to strike their names from the petition. He asked to be allowed to take the petition and to strike off those names. The auditor declined and referred him to the board of county commissioners and stated to him that he was about to make an order for a special meeting of the board to consider the petition and all matters pertaining thereto. The plaintiff, Teunis Slingerland, a resident and taxpayer of the county thereupon commenced this action and on May 21, 1894, obtained from the court commissioner of that county the allowance of a temporary injunction, restraining the defendant from making any order convening the county commissioners to consider the petition. Plaintiff claimed that these 194 names should be considered as stricken off leaving but 1,420 petitioners, whereas 1,490 were required. Defendant answered

and moved the court June 9, 1894, to vacate the injunction. The court granted the motion and plaintiff appeals.

*Davis, Kellogg & Severance* and *Robert Taylor*, for appellant.

The whole number voting at the last general election, as shown by the returns of such election, is to be ascertained from the poll lists. This we think will not be seriously questioned. Laws 1891, ch. 4, §§ 62–71 inclusive. The 184 votes cast by women at that election should be included. They were legal voters. If there be force in the argument that voting women should not be counted because they could not vote on the removal question, it should be addressed to the legislature rather than to the court.

The 194 petitioners had the absolute right to withdraw and strike off their names at any time before the petition was finally acted upon. *La Londe* v. *Board of Supervisors*, 80 Wis. 380; *State* v. *Nemaha County*, 10 Neb. 32; *Hays* v. *Jones*, 27 Ohio St. 218; *Dutten* v. *Hanover*, 42 Ohio St. 215; *Hord* v. *Elliott*, 33 Ind. 220; *Mayor* v. *State*, 57 Ind. 152; *Black* v. *Campbell*, 112 Ind. 122; *State* v. *Eggleston*, 34 Kan. 714, 37 Kan. 426; *People ex rel.* v. *Sawyer*, 52 N. Y. 296; *People ex rel.* v. *Allen*, 52 N. Y. 538; *Town of Springport* v. *Teutonia Sav. Bank*, 84 N. Y. 403.

No one will contend that the auditor had any discretionary, judicial power in the matter, for if he had, the law conferring it would be unconstitutional for that very reason. The same would be true if the law had conferred such judicial power upon the board of county commissioners. *Todd* v. *Rustad*, 43 Minn. 500; *State ex rel.* v. *Commissioners*, 43 Minn. 322; *State ex rel.* v. *Ueland*, 30 Minn. 29.

The statute clearly implies that before filing the petition the auditor shall inspect it and compute the number of signatures upon it, and compare it with the poll lists of the preceding election, to ascertain whether it is entitled to be filed or not. Before this is done and the petition filed in fact, the signers may withdraw therefrom and so notify the auditor. Such withdrawal could not be prevented by his refusal to permit them to manually erase their names. The names being thus stricken off as a matter of law, of which he had notice, and the number of signatures remaining, being insufficient to fill the requirements of the statute, the auditor had no right to

file it, or to issue his order thereon for the special meeting of the board.

The statute requires that the petition be signed by sixty per cent of the legal voters. A majority of the whole number of votes cast in the county at the last preceding general election is insufficient, because the first clause of section one of the statute reads sixty (60) per cent, and while the second clause requires a majority it is in the same connection, and for harmony must be construed to mean a majority of sixty per cent.

To prevent misappropriation of the county funds and the irreparable loss of consequent taxation, an individual tax payer may, in his own name and on his own behalf, maintain a suit in equity to restrain unlawful action leading directly or indirectly to such a result. *Hodgman* v. *Chicago & St. P. Ry. Co.*, 20 Minn. 48; *Sinclair* v. *Board of County Com'rs*, 23 Minn. 404; *Harrington* v. *Town of Plainview*, 27 Minn. 224; *Board of Liquidation* v. *McComb*, 92 U. S. 531; *State ex rel.* v. *Weld*, 39 Minn. 426; *State ex rel.* v. *Board of Co. Com'rs*, 42 Minn. 284, 43 Minn. 322; *Todd* v. *Rustad*, 43 Minn. 500; *De Forth* v. *Wisconsin & M. R. Co.*, 52 Wis. 320; *Wetherell* v. *Newington*, 54 Conn. 67; *Owens* v. *Crossett*, 105 Ill. 354.

*Wheelock & Sperry*, and *S. T. Littleton*, for respondent.

Under Laws 1889, ch. 174, it is necessary that the petition to the board of county commissioners signed by sixty (60) per cent of the legal voters voting in said county at the last general election as shown by the returns of such election shall be presented to the county auditor and that said petition must be accompanied by the proper affidavits. And when such a petition is presented then it immediately becomes the duty of the auditor to file the petition and call the county commissioners together. His duties being purely clerical and distinctly pointed out, he has no right to add to or take from them, or to add names to or strike them from the petition. *Ayres* v. *Moan*, 34 Neb. 210.

The *status* of the petition became fixed on its presentation to the auditor and it is entirely immaterial what the petitioners may do subsequently so far as the duty of the auditor is concerned. They cannot remove their names from the petition until it reaches the

tribunal to which it is addressed and which the law has specifically designated to hear and determine all these questions.

The legislature, knowing that controversies were likely to arise in the matter, very wisely provided a tribunal where all parties aggrieved could be heard and the matter fully adjusted. That this was the intention of the legislature is apparent from the proviso in section 2 of the act which provides that no remonstrance against the removal of the county seat shall be presented to or considered by the board, unless notice of a desire to contest the removal shall have been published for three weeks before the circulation of the remonstrance. When a sufficient petition has been presented the statute is mandatory and the auditor has no discretion in the matter. Neither he nor a few withdrawing petitioners can prevent the commissioners from considering it. They are the only body authorized by law to pass upon the sufficiency of such petition. Hence, it seems that when a petition is presented, as in this case, the county auditor has no duty to perform except to file it and call the board together. *Doolittle* v. *County Court*, 38 W. Va. 159.

If these petitioners have the right after the presentation of this petition and before it has reached the county commissioners to remove their names, then other parties would have the right after its presentation to sign the same, and so the auditor, if an unfair man and a partisan to either side, might make it a legal petition when it was not such, or destroy one that was legal and thus entirely defeat the purpose of the law and the will of the people.

The election returns show 2,510 votes cast at the last general election including the names of 186 women or 2,324 legal voters, sixty (60) per cent of which is 1,395. The petition did contain 1,614 names and if we deduct 194 names, 1,420 names remain, or more than sixty (60) per cent of the legal voters as shown by the election returns. Laws 1891, ch. 4, §§ 62–71.

Women voting at the previous election should not be counted as a part of the whole number voting. They are not legal voters generally. They are legal voters only in a limited sense; they are not such within the spirit and meaning of the statute and not so clearly within its letter as to forbid their exclusion. They have no right to vote when the question reaches the stage of voting; why should they be considered in making up a preliminary estimate.

Plaintiff has a full and complete remedy at law in this case.   He is given the right to appear before the commissioners, either in person or by counsel and be heard in respect to any matter of which he here complains.   He has a full and complete remedy by contesting the election if one should be held.   Laws 1893, ch. 4, § 190; *Todd* v. *Rustad*, 43 Minn. 500; *Weber* v. *Timlin*, 37 Minn. 274.

MITCHELL, J.   The questions raised by this appeal involve the construction of several of the provisions of Laws 1889, ch. 174, relating to the removal of county seats.

A petition for the removal of the county seat of Dodge county from Mantorville to Dodge Center, in the form prescribed by statute, was presented to the county auditor; and immediately thereafter, and before the petition was filed, one hundred and ninety four (194) of the signers presented to the auditor, in writing, duly-authenticated withdrawals of their signatures, and requests to him to strike their several names from the petition.   This the auditor refused to do, and was about to make an order for a special meeting of the board of county commissioners to act upon the petition.   Thereupon, the plaintiff, an elector and taxpayer, brought this action to enjoin the auditor from making the order or taking any further steps in the matter, on the ground that after the withdrawal of the one hundred and ninety four names the petition did not contain the required number of signatures.   A temporary injunction was issued, which the court subsequently dissolved.   From this order, plaintiff appeals.

1. It is urged by the defendant that the plaintiff has an adequate remedy at law, and therefore an injunction will not lie.   The point is not well taken.   Assuming that plaintiff has a remedy as respects the matter complained of, injunction is the only one.   The matter could not be reviewed either on certiorari or by contesting the election.   *Sinclair* v. *Commissioners of Winona Co.*, 23 Minn. 404; *Currie* v. *Paulson*, 43 Minn. 411, (45 N. W. 854.)

2. The next question is, how shall the whole number voting at the last general election, as shown by the returns of such election, be ascertained?   Clearly, it must be from the poll lists, as distinguished from the official count, which only shows the number of votes cast for a particular office, for the poll lists alone show the

whole number voting at an election. In the election law, the word "returns," no doubt, often refers particularly to the official count, but the poll lists are a part of the returns required to be transmitted by the judges of election to the county auditor.

3. We are also of opinion that women voting at the election should not be included in the computation. They are voters only for the purpose of electing school officers, and hence are electors only in a limited or qualified sense. They have no right to vote on the question of the removal of a county seat. As suggested by the learned trial court, if they are to be included in the computation a case might arise where the petition would not have the requisite number of signatures, although signed by every elector entitled to vote on the question of removal.

4. We are also of opinion that the word "majority," in the second clause of section 1 of the act, must be read in connection with the provision in the first clause that the petition must be signed by "not less than sixty per cent. of the whole number voting," etc. It must be construed as meaning, not a mere majority, but the majority required by the first clause, to wit, sixty per cent. This is not an accurate use of language, but it is clearly what the legislature meant.

5. It follows from these conclusions, and the undisputed facts in this case, that, if the names of the one hundred and ninety four who assumed to withdraw their signatures from the petition should be omitted from the computation, then the petition no longer contained the required number of signers. This brings us to the principal and only serious question in the case, viz.: What was the status of those one hundred and ninety four names? Had these persons the right to withdraw after the presentation of the petition to the auditor, and what were the powers and duties of the auditor in the matter?

We have no doubt of the right of any of the signers to withdraw his name from the petition at any time before the board of county commissioners has completed its inquiry and determination in the matter of purging the petition committed to it by the statute. This right is an absolute one, which the petitioner may exercise on his own motion, without assigning any reason therefor, or obtaining leave to do so from any one. This right is generally recog-

nized in other jurisdictions, under statutes whose only difference from ours, in that respect, is that the petition is presented, in the first instance, directly to the board, instead of the auditor. This difference does not, in our opinion, at all change the rule, for the sole object of the presentation of the petition to the auditor is to set in motion the preliminary machinery necessary to its orderly presentation to the board. To hold that the right of withdrawal terminates the moment the petition is presented to the auditor would open the door to all sorts of sharp practice. Indeed, we do not understand that defendant at all questions this right of withdrawal, but his contention is that, after the petition is once presented to the auditor, the right cannot be exercised until the petition reaches the board of county commissioners; that, so far as the auditor is concerned, the *status* of the petition is fixed the moment it is presented to him; that his duties are merely clerical; that he has no power to strike names off the petition; that if the petition, as presented, is sufficient in form, and contains the required number of signers, it is mandatory upon him to make the order and give the notices required by statute; that, if any names are to be withdrawn or stricken off, the matter must go before the board of county commissioners.

On the other hand, plaintiff contends that the fallacy in the argument is in assuming that the board is the tribunal designated by law to determine matters of withdrawals. He contends: That the board has no more power or discretion in the matter than the auditor has. That the only power conferred upon it by the statute is to determine —*First*, which of the signatures are not genuine; *Second*, whom of the signers were not legal voters; *Third*, which of the signatures were not attached within sixty days preceding the filing of the petition. That a signature is removed or withdrawn from the petition by the mere act of the party, and, when once withdrawn, stands as if never attached. And that whenever, by reason of such withdrawals, the petition, whether still with the auditor, or before the board, ceases to have the requisite number of subscribers, and all further proceedings are without authority of law and void. We concede the force of this reasoning, and we admit the correctness of most of the legal propositions upon which it rests. We may also admit that the reasons for refusing to accept the conclusion that withdrawals after

the petition is presented to the auditor will arrest it on its way to the county board may be founded more on practical considerations than on strict logic. In the first place, it does not seem to us that the legislature ever intended to give to the auditor any such liberty of action. If he should happen to be an unfair partisan, the abuses that might result are quite apparent.

Moreover, petitioners have the same power to recall their withdrawals that they have to withdraw their signatures; and, in view of the facility with which some men are induced to do such things, the existence of such a state of things is not improbable. This "place for repentance" remains open to them until the board of county commissioners have finally completed their action on the petition, so that, in one sense, the sufficiency of the number of signatures cannot be said to be finally and conclusively determined until that time arrives.

For these and other reasons which might be suggested, we have come to the conclusion that the statute does not contemplate that a petition, when once presented to the county auditor, may be arrested on its way to the board of county commissioners by the subsequent withdrawal of signatures; that the only power or duty conferred or imposed on the auditor is to ascertain whether the petition, as presented, conforms on its face to the requirements of the statute, and contains the required number of signers, which is to be ascertained by a comparison of the number of signatures with the number of electors on the poll lists; and that if it does it is mandatory on him to take steps necessary to bring it before the county commissioners.

There might seem to be a practical difficulty growing out of the fact that the statute makes no provision as to the manner of exercising the right of withdrawal. But, when it is remembered that a withdrawal is the mere act of the person himself, there is no serious difficulty. At any time before the right of withdrawal has expired, any signer has the undoubted right to demand of the board to have his name stricken off or withdrawn. He may authorize another to do it for him. If he should request the county commissioners to do so, they would have the undoubted right to strike his name off the petition, not by virtue of their office, but by virtue of their authority from him.

At best, the law is a very crude and unsatisfactory one, but this is the construction which seems to us most reasonable, and most in accordance with legislative intent. For the above reasons, we are of opinion that the court committed no error in dissolving the temporary injunction.

Order affirmed.

### On Petition for Reargument.

(Dec. 17, 1894.)

The sole ground upon which a reargument is asked is that the court erred in holding that a party who has withdrawn from a petition for the removal of a county seat has the right to recall that withdrawal at any time until the petition has been finally acted upon by the board of county commissioners. This was said merely by way of argument, and is therefore merely *obiter*. It was not necessary to the decision of the case, and involves a question which was not discussed by counsel. What was said on the subject is withdrawn, so that if the question arises hereafter it will be considered *res integra*.

Application denied.

GILFILLAN, C. J., absent on account of sickness, took no part.

(Opinion published 61 N. W. 322.)