BARTLES OIL COMPANY v. E. J. LYNCH.[1]

January 14, 1910.

Nos. 16,462—(213).

**Adulteration of Kerosene Oil.**

Chapter 502, Laws 1909, does not prohibit the sale of kerosene oil, which has been colored red, unless such coloring in some substantial degree renders the oil impure, or affects its illuminating qualities, or renders it less safe.

**Same — Question of Fact.**

Illuminating oil colored red is not by virtue of the statute an adulteration as a matter of law, but a question of fact.

**Same — Finding Sustained.**

The finding of the trial court, to the effect that the coloring of kerosene oil by the plaintiff by adding one pound of red aniline to seven thousand gallons of oil was not an adulteration thereof, is sustained by the evidence.

Action in the district court for Ramsey county to restrain defendant as state oil inspector from interfering with plaintiff in its business of selling a certain brand of illuminating oil. The substance of the pleadings is stated in the opinion. The case was tried before Brill, J., who made findings and ordered judgment in favor of the plaintiff. From the judgment entered pursuant to the order, the state appealed. Affirmed.

*George T. Simpson,* Attorney General, and *George W. Peterson,* Assistant Attorney General, for appellant.

*Durment & Moore,* for respondent.

[1]Reported in 124 N. W. 1.

START, C. J.

The plaintiff has for many years sold a brand of kerosene oil, which it has advertised and distinguished from other oils sold by it and other dealers by coloring it red. After the enactment of chapter 502, p. 630, Laws 1909, the defendant, as state oil inspector, directed his deputies to take the necessary steps to prevent the sale of such oil. Thereupon the plaintiff commenced this action in the district court of the county of Ramsey to enjoin the defendant from carrying such purpose into effect.

The complaint alleged the manner and form of coloring such oil, to the effect that the plaintiff adds to the oil, after it has been duly inspected and certified, red aniline in the proportion of one pound thereof to seven thousand gallons of oil before putting it upon the market; that such red aniline does not in any way detract from the illuminating property, or quality of the oil, nor does it in any way render it more explosive, nor in any way impair or deteriorate or render it more dangerous for illuminating purposes; that the quality of oil which the plaintiff colors and puts upon the market always measures up to the full requirements of the standards now fixed by the state of Minnesota for illuminating oil; and, further, that if the plaintiff be not permitted to sell such oil when so colored it will largely destroy plaintiff's business.

The answer alleged, in effect, that the coloring of the oil as averred in the complaint was as a matter of law and in fact an adulteration of the oil, and prohibited by the statute; but, other than this, the allegations of the complaint were not put in issue by the answer.

The cause was tried by the court without a jury. The facts found by the court were substantially those alleged in the complaint, and as a conclusion of law therefrom it was found that the coloring of the oil by the plaintiff was not prohibited by the statute, and that judgment be entered restraining the defendant from interfering with the sale of the oil as so colored. Judgment was so entered, from which the defendant appealed.

The assignments of error raise two general questions, one of law and one of fact. The first claim of the defendant is to the effect that

the sale of kerosene oil colored red is prohibited by the statute, and that the coloring of such oil is an adulteration within the meaning of the statute. The here material provisions of the statute, Laws 1909, p. 630, c. 502, are as follows:

"An act relating to the inspection of petroleum products, the appointment of chief inspector of oils and deputy inspectors, manner of inspection, establishing fees for inspection and salaries of inspectors, prohibiting the sale of adulterated oils, and providing penalties for violation thereof."   *   *   *

"SALE OF. ADULTERATED OILS FORBIDDEN. Sec. 9. The sale of any adulterated illuminating oils or gasolene is hereby forbidden and prohibited, and any oils that present a yellowish or dark color or dirty appearance to the eye, may be rejected and disapproved for illuminating purposes by the said chief inspector of oils or his deputies without further test. And such discoloration shall be prima facie evidence that such oils are not such a product as is properly subject to sale for illuminating purposes within this state.

"The chief inspector of oils and his deputies are not required in every case to make a complete analysis of the oils inspected to ascertain every form of impurities such as sulphur, tar-like matter, but whenever in the opinion of the chief inspector of oils or his deputies it is necessary that any of the oils provided for in this section shall be more thoroughly analyzed, it shall be their duty to procure a sample of such oil and forward same to the chemists of the state dairy and food department for the purpose of a more detailed analysis to determine in what particular the impurities or imperfections exist."

It is obvious, both from its title and its enacting clause, that the statute is directed against the adulteration of oil and not the coloring of it. The statute does not purport to prohibit the sale of colored oil unless such coloring constitutes an adulteration of it; if it does, then, no matter what the color may be, it cannot be sold. But it is urged that, while the statute does not expressly prohibit the coloring of oil red or the sale of such oil, yet the legislative history of the

statute shows that such was the intention of the legislature; hence it must be so construed.

Such history, briefly stated, is this: The bill originated in the house, and when it was passed and sent to the senate section 9 contained the proviso following: "Provided, however, that illuminating oil with a gravity test of 49% or better, may be colored red." The bill was amended in the senate by striking out this proviso, and, as amended, passed. The house concurred in the senate amendment. The conclusion which counsel for the defendant draws from this legislative history is that it was the intention of the legislature to prohibit the sale of red oil, whether such coloring of it constituted an adulteration or not. If such had been the intention of the legislature —an intention radically inconsistent with both the title and enacting clause—it would seem that such intention would have been expressed in the enacting clause, and not left to be inferred from the history of the bill. But, this aside, it is clear why the proviso was stricken out. The primary purpose of the act was to prohibit the sale of adulterated oil, and the effect of the proviso was to remove from this prohibition oil of the kind therein specified colored red, without reference to the character or quantity of the coloring matter added, or whether or not such coloring constituted an adulteration of the oil. Such being the effect of the proviso, it was properly stricken out, leaving the prohibition unmodified in any respect.

It is also claimed that illuminating oil colored red is an adulteration as a matter of law. If it be so, it must be by virtue of the statute, for we are referred to no other law. It is clear from the mere reading of the statute that it does not declare that the coloring of oil, without reference to the character of the coloring matter or its effect upon the quality and safety of the oil, is an adulteration. No attempt is made by the statute to define what constitutes the adulteration of oil, but from all the provisions of the statute it seems clear that any coloring of kerosene oil which in any substantial degree renders the oil impure, or affects its illuminating qualities, or renders it less safe, is an adulteration of it. The sale of such oil is prohibited, no matter what its color may be. It follows that illuminating oil colored red is not an adulteration as a matter of law, but that whether it

be or not is a question of fact in all cases, where the evidence is conflicting as to the extent, nature, and effect of the coloring matter. The question in this case was one of fact.

This brings us to the last contention of the defendant, which is that the findings of fact of the trial court are not sustained by the evidence. We have attentively considered the evidence, and reached the conclusion that the findings of fact are sustained by the evidence. The plaintiff's counsel admitted on the trial that, if oil had a yellowish, dirty or dark colored appearance, the placing of red aniline therein would in a large measure prevent the detection of such condition by the eye. The admission, however, is not here particularly significant, for it is admitted by the pleadings and not disputed by the evidence, that all of the plaintiff's oil is duly inspected and certified before the aniline is added, and that the quality of the oil which the plaintiff colors and puts on the market measures up to all the requirements of the standards fixed by statute.

Judgment affirmed.

On February 25, 1910, the following opinion was filed:

PER CURIAM.

Appeal from clerk's taxation of costs against the defendant and in favor of the plaintiff. The basis of the objection is that the defendant is an officer of the state, that costs as a general rule are not taxable against the state, therefore they cannot be taxed against him.

The defendant threatened and was about to interfere with the business of the plaintiff, assuming in good faith to do so as state oil inspector; and the plaintiff brought this action to restrain him from doing such act. The court held, supra, that he had no authority as oil inspector to do the threatened act, and rendered judgment accordingly. Such being the case he cannot escape liability for costs simply because he happens to be a state officer, for as such officer he had no authority to do the act complained of.

Affirmed.