KATHERINE V. SULLIVAN, APPELLANT, v. MAYOR AND COUNCIL OF THE BOROUGH OF RAMSEY, RESPONDENT.

Submitted May 26, 1928—Decided October 15, 1928.

For the appellant, *Wright, Vander Burgh & McCarthy* (*John J. Sullivan*, of counsel).

For the respondent, *J. W.* and *E. A. De Yoe*.

The opinion of the court was delivered by

MINTURN, J.   A writ of *certiorari* was allowed by one of the Supreme Court justices to review the procedure in connection with the passage of ordinance 142, under which the borough of Ramsey, in the county of Bergen, had contracted to issue $24,000 in bonds for the purchase of a plot of ground and a building to be erected thereon, to be used as a municipal building.   The bonds were to be issued under the provisions of what is known as the Bond act, being chapter 252 of the laws of 1916 as amended, whereby the taxpayers of a borough are given the right to file a protest against the issuance of bonds.   If an effective protest be filed, the bonds cannot be issued unless the proposal by the mayor and council of the borough to issue them be confirmed or adopted at a succeeding election.

After the introduction of the ordinance the borough caused notice thereof to be published, and thereupon certain taxpayers filed the protest involved in this case against the adoption of the ordinance.   The borough, however, passed the ordinance notwithstanding the protest, and the question presented now is whether the borough was legally justified in so doing.

The case was heard on *certiorari* before a Supreme Court justice sitting for the court, who upheld the action of the borough in passing the ordinance, and one of the taxpayers and protesters has appealed from the judgment entered thereon.

The proofs introduced in the case show that the ordinance, in addition to providing for the acquisition of this land, authorized the issuing of twenty-four bonds of the denomination of a thousand dollars each, each bond to become due a year apart until the whole amount of the issue would be paid.

The act provides further that, if within ten days after the publication of the ordinance authorizing the issuance of the bonds, a protest against the issuance shall be filed in the office of the clerk of the borough, signed by taxpayers representing ten per cent. in amount of the assessed valuation of such bor-

ough, whose names appear on the last preceding assessment roll thereof, then such bonds shall not be issued unless within sixty days after the publication of such ordinance a proposition for the issuance thereof shall be adopted at an election to be held for that purpose by a majority of the qualified voters of such municipality voting on this proposition.

It further provides as follows: "The certificate of the clerk of the borough, filed in his office, as to the filing and sufficiency of any protest or protests, shall be conclusive for the purpose of this section."

It further appears from the undisputed facts, that the assessed valuation of the property in the borough was $2,870,989.

The ordinance was published on February 10th, 1927, and on the 17th day of February of that year a protest against the issuing of the bonds was presented to the clerk, signed by taxpayers representing $366,275. Three of the signers, however, were not property owners whose names appeared on the last preceding assessment roll of the borough, and their names were stricken off by the borough clerk. The total amount of the property represented by them was $31,000. This action left the remaining property owners represented on the protest to the assessed value of $335,275 legal protesters against the issuing of the bonds, an amount much in excess of the ten per cent. required by the statute for the purpose.

It appeared, however, that before the expiration of the ten days a certain number of the parties who had signed the protest notified the clerk that they had withdrawn their names as protesters, and the total amount of the real estate represented by them, if their withdrawal were legally efficacious, would be sufficient to reduce the value of the property owned by the remaining protesters below the ten per cent. requirement.

The question thus presented for consideration is whether the parties once having signed the protest to the amount required and provided for by the statute, so as to fulfill the statutory requirement as to protesting conditions, and such protest having been filed with the clerk, any of them might

thereafter withdraw their signatures from the protest, and thereby cancel their action so as to render the protest legally valueless.

Our consideration of the case leads us to the conclusion that they could not legally thus proceed, and that their action in attempting to withdraw their names from the protest after it had been fully signed in accordance with the statutory requirement was nugatory.

The case which we think governs the situation is that of *Brodhead* v. *Flemington,* 85 *N. J. L.* 25. In that case the question presented was as to the effect of the Borough act of 1906, in a situation practically analogous. That statute provided that if after the adoption of the preliminary resolution of the intention of the council to submit to the voters a resolution to purchase certain water works, and within sixty days after the first publication of the notice of intention a remonstrance against the purchase should be signed by the owners of not less than one-half of the value of the real estate in the borough, according to the last preceding assessed valuation filed with the borough clerk, no such election should be called. The court held under this provision that parties joining in the remonstrance were privileged to withdraw their names therefrom at any time during the sixty days provided for by the statute; provided, that the remonstrances to the required amount had not been filed with the borough clerk up to that period; but that the filing of a remonstrance containing the required statutory amount at any time during the sixty days rendered the withdrawals made thereafter inefficacious. Mr. Justice Garrison, writing the opinion of the court, said: "The statute has in the most explicit manner stated the event upon the occurrence of which the power of the common council should be at an end, namely, when remonstrances representing not less than one-half of the assessed value of the real estate should be filed with the city clerk. The fact that sixty days are given within which the remonstrances must be filed does not in the least affect the foregoing provision, or substitute for it the very different provision that council's authority shall depend upon the state

of the clerk's files at the end of the sixty days. Until the specified event set up by the statute has occurred, *i. e,* before one-half of the assessed value has been filed with the borough clerk, withdrawals are, of course, efficacious to reduce the amount on file."

This it seems to us was the legislative contemplation as expressed in the act under consideration in this case. The legislative requirement was completed when the necessary number of signatures were attached to the protest and filed with the clerk, and it was not within the power of any of the protesters or of the clerk in that status to withdraw from such protest any name attached thereto so as to render the statutory requirement nugatory. Nor do we consider this construction of the legislation at all inimical to that expressed in *Wilson* v. *Collingswood,* 80 *N. J. L.* 626, where apparently the withdrawals were held to be valid because when made the signatures to the remonstrances were not sufficient in number to defeat the proposed scheme of the municipality.

It is further argued that under the provision of the statute above cited relating to the power of the clerk, the certificate of that official filed in his office as to the sufficiency of any protest shall be conclusive for the purpose of that section; and it is argued that the clerk filed such a certificate showing that the protests were insufficient, and that therefore such a certificate was conclusive upon the borough council, and rendered nugatory the statutory scheme to which we have referred.

We do not, however, find any such certificate in the record. The only certificate submitted was one that the protests had been filed. It is said, however, that this certificate is without legal effect, because after signing it the clerk struck his name therefrom. We conceive, however, that there is nothing in that contention. The mere fact that the clerk did not file a certificate that the remonstrances had been filed in his office cannot operate to defeat the clear right of the property holders under the statutory enactment. The protest became valid when it was deposited with the clerk in his office, and the mere fact that the clerk failed to notice on the document, or

by any writing, the fact of the filing, cannot be held to render nugatory the acts of the property owners performed in accordance with the provisions of the statute. In any event, the statute only makes the certificate of the clerk that the remonstrance has been filed conclusive proof of that fact. Where no such certificate of the clerk has been filed, then the fact of the filing could be proved by testimony *ab extra*.

The conclusion we have reached is that the legislature having provided a statutory scheme, and created a legislative status concomitant with the happening of a certain event as in this instance, the supplying of a *quantum* of signatures to a document to be filed with the clerk, such legislative status when consummated could not be thereafter changed either by the act of the protesters signed to the document, or by the act of its clerk in failing to properly perform a mere ministerial duty.

The judgment of the Supreme Court will therefore be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.