## STATE v. TOWN OF BALKAN.[1]

June 8, 1951.

No. 35,477.

*Frank M. Talus,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Joseph J. Bright,* Assistant Attorney General, and *G. L. Ware,* Special Assistant Attorney General, for the State.

KNUTSON, JUSTICE.

Appeal from an order denying defendant's motion for amended findings or a new trial.

On April 11, 1947, the county auditor of St. Louis county transmitted to the public examiner of this state a petition for the exami-

[1]Reported in 48 N. W. (2d) 515.

nation of the books and records of defendant town, together with his certificate stating that the number of freeholders on said petition is not less than the number required by law. Pursuant thereto, the public examiner began such audit on April 6, 1948, and completed it on August 10, 1948, the audit covering the six-year period ending March 31, 1948.

In making his audit, the public examiner adopted a fiscal year running from April 1 to March 31 of each year. Upon completion of the audit, the public examiner submitted to defendant a claim in behalf of the state for $4,205.79, representing the costs and expenses of the audit. The town refused to pay the claim, and suit followed.

■ The first contention of defendant is that the petition contains an insufficient number of signers. M. S. A. 215.19 reads as follows:

"A petition for an examination under the provisions of this chapter of the books, records, and accounts and affairs of any city, borough, village, town, or school district shall, in the case of a city, borough, village, or town, be signed by at least three freeholders for each 100 inhabitants thereof, the number of which shall not be less than ten, and, in the case of a school district, by not less than ten freeholders. Before such petition is delivered to the public examiner it shall be presented to the auditor of the county in which such city, borough, town, village, or school district is situated, who shall determine whether such petition is signed by the required number of freeholders and shall certify such fact thereon, and such certificate shall be conclusive evidence thereof in any action or proceeding for the recovery of the costs, charges and expenses of any examination made pursuant to such petition."

This statute places upon the county auditor the responsibility for examining the petition for its sufficiency to comply with the statute and makes his certification thereof conclusive evidence of the sufficiency of the petition in an action of this kind. Even if we were to hold that the presumption is a rebuttable one, there is no evidence of the insufficiency of the petition. We must therefore hold that the petition is sufficient.

■ The second contention of defendant is that the audit should have adopted a calendar-year basis instead of a fiscal-year basis, and that the audit made upon a fiscal-year basis is of no value to the town. There is no requirement in the law that the audit be based upon any particular year. The evidence is conclusive that the books and records were in such shape that it could not be determined upon what basis they had been kept. We believe that the audit upon a fiscal-year basis under the circumstances accomplished all that the law intended such audit to do.

■ The third contention of defendant is that even if the public examiner is entitled to recover his costs and expenses he is limited to the sum of $10 per day under Minn. St. 1945, § 215.21.

Prior to the enactment of L. 1947, c. 634, § 24, § 215.21 read as follows:

"Upon the examination of the books, records, accounts, and affairs of any city, village, town, or school district, as provided by law, such city, village, town, or school district shall be liable to the state for the total cost and expenses of such examination, including the salaries paid to the examiners while actually engaged in making such examination. Such salary charge shall not exceed $10.00 per day. The appropriation accounts of the public examiner shall be credited with all collections made for any such examinations, and moneys so collected are hereby appropriated for the uses and purposes of the appropriation accounts."

L. 1947, c. 634, § 24, which set up a new plan for collecting the costs of such examination, provided in part:

"The revolving fund established hereby shall be used to employ personnel and pay other expenses for reimbursable examinations only. All receipts from such examinations shall be deposited in the fund herein established and are hereby reappropriated to that purpose. Notwithstanding any law to the contrary, the Public Examiner is directed to adjust his schedule of charges for such examinations to provide that such charges shall be sufficient to cover all costs of such examinations and that the aggregate charges

collected shall be sufficient to pay all salaries and other expenses connected with such reimbursable examinations. The Public Examiner shall review and adjust the schedule of charges for such examinations at the end of each six months and have all schedules of charges approved by the Commissioner of Administration before they are adopted so as to insure that the amount collected shall be sufficient to pay all the salaries and expenses connected with such examinations during the fiscal year and that the unobligated balance, including accounts receivable, in the revolving fund at the end of each fiscal year shall not be less than $100,000. The unobligated balance in said revolving fund in excess of said $100,000, as of June 30 of each fiscal year, shall be cancelled into the general revenue fund."

L. 1949, c. 33, § 5, which amended Minn. St. 1945, § 215.21, clarified the provisions of the 1947 law by providing as follows:

"Upon the examination of the books, records, accounts, and affairs of any city, village, town, or school district, as provided by law, such city, village, town, or school district shall be liable to the state for the total cost and expenses of such examination, including the salaries paid to the examiners while actually engaged in making such examination. The revolving fund of the public examiner shall be credited with all collections made for any such examinations."

It is the contention of defendant that until L. 1949, c. 33, § 5, became effective the $10 per day limitation applied in spite of L. 1947, c. 634, § 24. With this we cannot agree. It is apparent that when the legislature set up a revolving fund under the 1947 law it was its intention that thereafter the actual cost of the examination should be collected, to the end that the revolving fund would remain available at all times. The 1949 law simply clarified the statutes by the enactment of a law which could be found in the statute books. The 1947 law is not coded and does not appear in the statute book.

There is no evidence to contradict the claim of the state that the expenses charged constitute the actual cost of the audit. The trial

court's findings in that respect are more than amply sustained by the evidence; in fact, there is no evidence to the contrary.

The order of the trial court should be affirmed.

Affirmed.