STATE v. VILLAGE OF PIERZ.[1]

January 15, 1954.

No. 36,047.

[1]Reported in 62 N. W. (2d) 498.

*J. A. A. Burnquist,* Attorney General, *Joseph J. Bright,* Assistant Attorney General, for the State.

*Gordon Rosenmeier* and *John E. Simonett,* for respondent.

KNUTSON, JUSTICE.

The facts essential to a determination of the issue here involved may be briefly stated. .

Pursuant to a petition of 23 freeholders of defendant village the public examiner made an audit of the books, records, and accounts of the village for a period of 13 years ending on January 1, 1948. A further examination of the following year was made upon petition of the village authorities, but that is not involved here. The sufficiency of the freeholders' petition was certified by the auditor of Morrison county, as is required by law. After the completion of the audit, the state auditor issued his draft upon the village for the cost of the audit. The village contested the claim, and the attorney general thereafter filed the verified claim of the state with the district court of Morrison county. The village filed its objections pursuant to M. S. A. 215.23, claiming that the public examiner had no authority to make the examination and as a consequence the village was not liable for the cost thereof. The trial court held in favor of the village, and this appeal is from an order denying the state's motion for a new trial.

It is the contention of the village that, after the adoption of 1945 revision of the Minnesota statutes, the authority to audit the books of a village upon a petition of freeholders no longer existed.

Prior to the enactment of L. 1929, c. 259, the examination of the books of a village was governed by Mason St. 1927, § 3281[2] (L. 1913, c. 555, § 8), which read:

"All powers and duties of the public examiner herein imposed and conferred with respect to the supervision, inspection and examina-

[2]Reference to § 8 in the body of this section should read § 7, which deals with the examination of the books of cities. See notation to section in Mason St. 1927.

tion of books and accounts of cities in section 8 hereof are herewith extended to all school districts, towns and villages of this state; provided, that the public examiner shall conduct an examination of the records of any such town, village, or school district on the petition of ten freeholders thereof, and the town, village, or school receiving such examination shall pay the state for the same at the rate of $5 per day and expenses. A copy of the report of such examination shall be filed subject to public inspection, with the clerk of the town, village, or school district receiving such examination, and an additional copy with the county auditor; provided, that if such report disclose malfeasance, misfeasance, or non-feasance in office, the public examiner, shall file such copy with the county attorney of the county in which such school district, town or village is located, and said county attorney shall institute such proceedings as the law and the public interest require."

L. 1929, c. 259, § 1, read as follows:

"A petition for an examination under the provisions of Chapter 18, General Statutes 1923, of the books, records and accounts and affairs of any city, village, town or school district shall in the case of a city, village, or town be signed by at least one freeholder for each 100 inhabitants thereof, the number of which shall not be less than ten and in the case of a school district by not less than ten freeholders. Before such petition is delivered to the comptroller it shall be presented to the County Auditor of the County in which such city, town, village, or school district is situated, who shall determine whether such petition is signed by the required number of freeholders and shall certify such fact thereon and such certificate shall be conclusive evidence thereof in any action or proceeding for the recovery of the costs, charges and expenses of any examination made pursuant to such petition."

The effect of this act was to change the number of freeholders of a village required on a petition for an examination from ten freeholders to one freeholder for each 100 inhabitants, the same as it was prior thereto under Mason St. 1927, § 3280, in the case of a city. In other words, it placed villages on a par with cities in this respect.

The act was amended by L. 1937, c. 415, so as to require three free-holders for each 100 inhabitants and as so amended was coded as Mason St. 1940 Supp. § 3286-1.

When the revisor of statutes attempted to carry these provisions into the 1945 revision he apparently believed that § 3286-1 was self-sufficient and had to some extent superseded § 3281. Consequently § 3286-1 was copied substantially verbatim in the new code as M. S. A. 215.19. Section 3281 became M. S. A. 215.14 in the new revision and as far as meaning is concerned was copied verbatim except that the following was deleted:

"provided, that the public examiner shall conduct an examination of the records of any such town, village, or school district on the petition of ten freeholders thereof, and the town, village, or school receiving such examination shall pay the state for the same at the rate of $5 per day and expenses."

It is now the contention of the village that, even though § 215.19 provides for the preparation of a petition by freeholders, the public examiner has no authority to proceed under such petition for the reason that whatever authority he had prior to the adoption of the 1945 revision was withdrawn by the omission or deletion of that portion of § 3281 quoted above.

It is undoubtedly true that when the legislature adopted the 1945 revision it became the law of this state. State ex rel. Bergin v. Washburn, 224 Minn. 269, 28 N. W. (2d) 652. However, where an ambiguity had arisen by virtue of a deletion, omission, or change of language, it is as much our function to ascertain the legislative intent, if we can, from the language used in the new re-vision as it is in those cases where we construe a single act of the legislature. We should no more ascribe to the legislature an intent to do something absurd in adopting a new revision of our laws than we would ascribe such intent where it adopts a single act. It seems to us that the legislative intent here is clear. In the first place, it was not the intention of the legislature to change existing law by the new revision. The act of the legislature in adopting the new revision contains, among other things, the following provision:

"The laws contained and compiled in Minnesota Statutes 1945 are to be construed as continuations of the acts from which compiled and derived and not as new enactments."[3]

L. 1943, c. 545, § 2, subd. 1, conferred upon the revisor authority to make such changes in language and arrangement as he deemed necessary in order to consolidate, clarify, simplify, and codify the statutes and to give effect to the intent of the legislature in respect of the laws embraced therein. It was not the intention of the legislature to confer upon the revisor authority to make changes in existing laws.

To make sure that no change was effected in the authority of the public examiner, § 215.25 was included in the 1945 revision. This section reads:

"Subject to the provisions of Laws 1939, Chapter 431, the public examiner shall have and exercise all the rights, powers, and duties conferred upon the former public examiner by Mason's Minnesota Statutes of 1927, Sections 3274, 3275, 3276, 3277, 3279, 3280, 3281, 3282, 3283, 3284, and 3286, and the 1938 Supplement to Mason's Minnesota Statutes of 1927, Sections 3278, 3286-1, 3286-2, 3286-3, 3286-4, 3286-5, 3286-6, and 3286-7, and acts amendatory thereof or supplementary thereto, and all the provisions thereof shall apply to and govern all matters therein specified respecting the office and department of the public examiner, except that any limitations therein contained as to the number of employees to be appointed by the public examiner shall not apply. The public examiner shall account separately for all of the charges, receipts, and disbursements of the department of the public examiner pertaining to the examining and auditing of all school districts, towns, cities, villages, and boroughs for which charges are made, and after allocating to the expense thereof a proper pro-rata share of the administrative expense, such functions of the department of the public examiner shall be sustained, so far as practicable, by the funds collected therefor from such political subdivisions as otherwise provided by law."

[3]L. 1945, c. 67, § 4.

Section 215.25 came into our laws as part of the reorganization act of 1939 (L. 1939, c. 431, art. 4, § 8). At the time of the adoption of the 1945 revision it had completely served its usefulness unless it was intended to prevent a construction of the revision which would change the meaning of the statutes from the meaning they formerly had. It is significant that § 215.25 of the 1945 revision refers to § 3281 and other sections of Mason St. 1927 rather than to § 215.19 and other sections of the new revision. It may well be that when this section was first adopted it was intended to serve some other purpose, but its inclusion in the 1945 revision could serve no other purpose than to make sure that the powers and authority formerly existing in the public examiner continued the same as they had been.

Unless the language used in the revised statutes is so unambiguous that there is no room for judicial construction we should not hold that the legislature intended to retain § 3286-1 as it was, thereby preserving that section which prescribes the requisites for a petition by freeholders who desired an examination of the books and records of a village, and at the same time intended to destroy that provision which made it possible to use such petition. It could hardly be supposed that the legislature intended that § 215.19 would be left suspended in a vacuum where it could serve no useful purpose. It is obvious that if that had been the legislature's intention it would have left out § 3286-1 entirely. Not having done so, we should give effect to it if we can.

The state relies to some extent upon our decision in State v. Town of Balkan, 234 Minn. 329, 48 N. W. (2d) 515. That case is not of much help here. The question before us was not there raised or presented. Apparently everyone involved in that case assumed that the public examiner had the authority and was obliged to make the requested examination, upon presentation of a proper petition, subsequent to the adoption of the 1945 revision as well as before.

The village next contends that, even if the duty to proceed with the examination existed after the adoption of the 1945 revision, it was eliminated by the enactment of L. 1949, c. 33. The simple answer

to this contention is that L. 1949, c. 33, does not purport to affect §§ 215.14, 215.19, or 215.25. It specifically amends §§ 215.04, 215.05, 215.11, 215.13, and 215.21, and beyond that it has no effect upon the statutes here involved.

It is our opinion that the legislative intent, as manifested by the statutes involved, clearly shows that the public examiner had authority to make the examination involved upon the petition filed and that the decision of the trial court must be reversed.

Reversed.

FRANK T. GALLAGHER, JUSTICE (dissenting).

I cannot agree with the majority here. The only legal issue raised by the state on appeal is whether M. S. A. 215.19 authorized the public examiner to audit the books, records, accounts, and affairs of the village of Pierz upon the petition of freeholders. In my opinion it did not.

In 1913 the legislature passed L. 1913, c. 555, an act to continue and provide for a department of public examiner and extending and defining his powers and duties. Section 8 of that act[4] (Mason St. 1927, § 3281, coded as M. S. A. 215.14), with which we are here concerned, extended the powers and duties of the examiner to school districts, towns, and villages of the state. It also provided that the public examiner "shall conduct an examination" upon a petition of freeholders, as provided for therein. L. 1929, c. 259, § 1, upon which the state relies for its authority to collect from the village, coded as § 215.19, did not contain the authority for a compulsory examination on a freeholders' petition contained in § 3281. Rather, it appears to me that L. 1929, c. 259, § 1, is not a fully operative and self-contained statute without reference to G. S. 1923, c. 18, and Mason St. 1927, c. 18. As I see it, an examination of the opening sentence of L. 1929, c. 259, § 1, establishes its dependence upon the existing laws governing the public examiner when it provides for a "petition for an examinaton under the provisions of Chapter 18, General Statutes 1923, of the books, records * * *." It therefore appears to me that § 215.19 was not intended to confer any new authority or impose

---

[4]See note 2 of majority opinion.

any new duty upon the examiner, as that authority and duty were already in the statute (§ 3281), but that its purpose was to change the number of petitioners required and set up a rule of evidence as to the petition provided for in §§ 3280 and 3281.

In the 1945 revision of the statutes it was deemed by the legislature that certain portions of c. 259 superseded a part of § 3281, and the following language was omitted from the latter:

"provided, that the public examiner shall conduct an examination of the records of any such town, village, or school district on the petition of ten freeholders thereof, and the town, village, or school receiving such examination shall pay the state for the same at the rate of $5 per day and expenses."

The trial court concluded that the authority in law for the examination and audit of the books and records of villages upon freeholders' petition was terminated by the deletion above referred to and ordered judgment for the village. It is my opinion under the facts and circumstances here that the trial court was correct and should be affirmed.

At the time of the oral argument the question was raised by this court as to whether M. S. A. 215.25, set out in the majority opinion, preserved or restored the rights, powers, and duties of the public examiner which were conferred upon the former public examiner by Mason St. 1927, §§ 3280 and 3281, and Mason St. 1940 Supp. § 3286-1. Supplemental briefs were requested by the court and were presented by both parties on this point.

In its supplemental brief the state claims that the enactment of § 215.25 provided an alternative reason why the public examiner had the mandatory duty to make the audit for the village and that, if § 215.19 did not authorize the public examiner's audit of the village records, § 215.25 did authorize it.

The village denies that the inclusion of § 215.25 in the 1945 revision had the effect of preserving or restoring the rights, powers, and duties which were conferred upon the former public examiner by Mason St. 1927, §§ 3280 and 3281, or claimed to have been conferred by Mason St. 1940 Supp. § 3286-1.

It is my opinion that the inclusion of § 215.25 in the 1945 revision did not have the effect of restoring or preserving the rights, powers, and duties which were conferred upon the former public examiner by Mason St. 1927, §§ 3280 and 3281.

The offices of the state board of audit and the former public examiner were abolished by the reorganization act of 1925 (L. 1925, c. 426, art. 3, § 2, and art. 18, § 1), and the powers and duties of the public examiner were transferred to the state comptroller. The office of the comptroller was abolished by the 1939 reorganization act (L. 1939, c. 431, art. 2, § 22) and certain of his powers were transferred by art. 4, § 9 (§ 215.04), which reads:

"The powers and duties of the board of audit and of the former public examiner, heretofore transferred to, vested in, and imposed upon the comptroller, are hereby transferred to, vested in, and imposed upon the public examiner created by this act."

These powers and duties were the powers so transferred by the 1939 reorganization act (L. 1939, c. 431, art. 4, §§ 8 and 9, coded as §§ 215.25 and 215.04). As it appears to me, they merely transferred the enumerated powers and duties to the newly created office of public examiner as they existed at the date when the reorganization act was adopted on April 22, 1939, and when the 1939 reorganization act went into effect the provisions of § 8 were fully executed. The inclusion of that section in the 1945 revision could not create any new powers or duties beyond those authorized in the 1939 act without subsequent legislation in the matter, which we do not find until L. 1951, c. 185. Except for explanatory purposes, it appears to me that § 215.25 could have been omitted from the 1945 revision. Section 215.25 merely carried forward the provisions of the law as modified by amendments prior to 1939.

Section 4 of L. 1945, c. 67, adopting the 1945 revision reads:

"The laws contained and compiled in Minnesota Statutes 1945 are to be construed as continuations of the acts from which compiled and derived and not as new enactments."

46

DELL, CHIEF JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Frank T. Gallagher.

THOMAS GALLAGHER, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Frank T. Gallagher.

