HENRY C. DOMEIER v. RICHARD A. GOLLING.[1]

December 3, 1954.

No. 36,233.

[1]Reported in 67 N. W. (2d) 898.

*Somsen & Somsen,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *Joseph J. Bright,* Assistant Attorney General, for respondent.

CHRISTIANSON, JUSTICE.

Plaintiff, a resident, freeholder, and taxpayer of the city of Sleepy Eye, brings this action to enjoin Richard A. Golling, public examiner of the state of Minnesota, from conducting an examination of the books, records, accounts, and affairs of said city pursuant to a freeholder's petition filed in his office on February 16, 1950. The action was tried to the court, and findings of fact and conclusions of law were entered denying the requested relief. Plaintiff appeals from the order of the trial court denying his alternative motion for amended findings or for a new trial.

Shortly before February 14, 1950, a petition was presented to the county auditor of Brown county, containing the names of 96 persons. The petition was addressed to the public examiner of the state of Minnesota and requested the public examiner to audit the books, records, accounts, and affairs of the city of Sleepy Eye for the period from January 1, 1940, to January 1, 1950. This procedure for requesting the services of the public examiner is authorized by M. S. A. 1949, § 215.19, which before its amendment in 1951 and 1953 provided:

"A petition for an examination under the provisions of this chapter of the books, records, and accounts and affairs of any city, borough, village, town, or school district shall, in the case of a city, borough, village, or town, be signed by at least three freeholders for each 100 inhabitants thereof, the number of which shall not be less than ten, * * *. Before such petition is delivered to the public examiner it shall be presented to the auditor of the county in which such city, borough, town, village, or school district is situated, who shall determine whether such petition is signed by the required number of freeholders and shall certify such fact thereon, and such certificate

shall be conclusive evidence thereof in any action or proceeding for the recovery of the costs, charges and expenses of any examination made pursuant to such petition."

It is agreed by the parties that, in view of Sleepy Eye's population at the time the petition was filed, the statute required that a valid petition must contain the names of at least 88 freeholders. Plaintiff established at the trial that five of the signers of the petition were not freeholders, leaving 91 qualified signers, three more than the statute required. In accordance with the duty placed upon him by § 215.19, the county auditor examined the petition and certified thereon that it contained the names of not less than the number of freeholders of the city of Sleepy Eye required by the statute. He then delivered it to the public examiner on February 16, 1950.

On July 2, 1951, more than 14 months later, the public examiner started to do some preliminary work on the audit but stopped his work the same day after learning that a number of the original signers of the petition were attempting to withdraw their names. The reason for his delay in the commencement of the audit was a backlog of work in his office. The cost of the work done on July 2, 1951, including traveltime and expenses was only $53.20 and, though this charge would normally be paid by the city of Sleepy Eye,[2] plaintiff tendered payment of the same in the event he is successful in this action. The audit requested would cost the city of Sleepy Eye not less than $5,000, and it would take two men approximately three months to complete the audit. The books of the city had been audited annually by a certified public accountant for the past 10 or 15 years.

The withdrawal petition which prompted the public examiner to suspend the audit was presented to the county auditor on July 20, 1951. It contained the names of 62 freeholders who had signed the original petition and requested the removal of their names from the original petition on the ground that such an audit by the public examiner was unnecessary. On July 21, 1951, this withdrawal petition was presented to the public examiner, after it had been certified

[2]M. S. A. 215.21.

by the county auditor. Thereafter on September 4, 1951, plaintiff instituted the present action to enjoin the audit requested in the original petition. Unless enjoined the public examiner will proceed to perform and complete said audit for the 10-year period requested.[3]

In addition to claiming that the withdrawal petition operated to remove the names of enough signers to invalidate the original petition, plaintiff contends for various reasons that the original petition was itself invalid and that the county auditor erroneously certified its adequacy to the public examiner. We regard the operative effect of the withdrawal petition as the principal question presented by this appeal, and will consider the plaintiff's contentions with regard to the original petition only in the event that we conclude that the withdrawal petition was ineffective.

Plaintiff contends that the withdrawal petition, certified as it was by the county auditor, effectively removed the names of enough signers of the original petition to reduce their number below the 88 signatures which were required by § 215.19. Defendant argues that the withdrawal petition was ineffective since the power to withdraw signatures from the original petition was terminated by the county auditor's certification to the public examiner that the original petition contained the signatures of enough freeholders to satisfy the requirements of the statute. In support of this contention, defendant directs our attention to Jefferson Highway Transp. Co. v. City of St. Cloud, 155 Minn. 463, 193 N. W. 960.

In that case a petition was presented to the city clerk pursuant to a home rule charter asking that an election be called to allow the voters to approve or disapprove an ordinance passed by the city council. The charter gave the city clerk no power to determine the sufficiency of the petition. His only duty was to present the petition to the city council at its next meeting and the council, before acting

---

[3]The public examiner's testimony at the trial makes it clear that prior to the amendment of § 215.19 in 1953 where, as here, a freeholder's petition requested an audit for a certain number of years it was not within his discretion to limit the audit to a lesser period. However, it should be noted that § 215.19 was amended by L. 1953, c. 689, § 1, and the public examiner was thereby given considerable discretion in this and certain other respects.

on the petition, had the duty to determine its sufficiency. Before the city clerk presented this original petition to the council, a second petition requesting the withdrawal of enough names to render the first petition invalid was presented to the city clerk. The city council considered both petitions at its next meeting and, after deciding that the original petition was invalid by reason of the withdrawals, refused to call the election requested in the original petition. This court upheld the city council's position that the withdrawal petition was effective, reasoning that, since the city clerk had no duty to certify the adequacy of the original petition to the city council, withdrawals were possible until the city council had passed upon its validity. The language used in the Jefferson case seems to indicate, however, that if the city clerk had been charged with the responsibility of determining the sufficiency of the petition, his certification would have terminated the right of signers to withdraw their names.

In two analogous cases decided by this court involving petitions for the removal of county seats, withdrawal after the petition was filed with the county auditor was permitted on the theory that the board of county commissioners and not the county auditor had the duty to determine the sufficiency of the petition. State ex rel. Streissguth v. Geib, 66 Minn. 266, 68 N. W. 1081; Slingerland v. Norton, 59 Minn. 351, 61 N. W. 322. From the foregoing cases the general rule emerges that withdrawals are not timely if they are presented after the officer or body charged with the duty of certifying the adequacy of the original petition has performed this function. See, also, Doyle v. Jordan, 200 Cal. 170, 252 P. 577; State ex rel. Freeze v. Taylor, 90 Mont. 439, 4 P. (2d) 479; State ex rel. Harris v. Hinkle, 130 Wash. 419, 227 P. 861.

However, the power to withdraw one's signature from a petition is an important right and one which should not be taken from the signer without good cause. In view of the ease with which signatures to a petition are often obtained, signers should be given every opportunity to reflect upon the advisability of their actions and to withdraw their approval if, after mature reflection, they so desire.

Without this power to remedy an impulsive act, petitions would serve as a trap for the unwary and would seldom convey the impression of the community's thought that they are designed to reveal.[4]

Quite often the right to present a petition is limited by statute or charter provisions to a prescribed period of time. If signers seek to withdraw their names near the end of this period making it impractical if not impossible to obtain additional names prior to the deadline, withdrawals are not permitted. See, Uhl v. Collins, 217 Cal. 1, 17 P. (2d) 99, 85 A. L. R. 1370; Sullivan v. Mayor and Council of Ramsey, 105 N. J. L. 142, 143 A. 364. But where no substantial harm is caused to the rights of others by withdrawals, little reason exists for prohibiting them. Thus, where ample time remains to obtain additional signatures, it has been held that withdrawals are permissible. State ex rel. Papke v. Denu, 66 S. D. 282, 281 N. W. 822. Since no time limit is imposed by the statute authorizing freeholders to petition for an audit by the public examiner, we are unable to see how the proponents of this petition will suffer a setback serious enough to justify denial of the withdrawal right to the signers of the original petition. If the proponents wish to solicit additional names, there is nothing in the statute to prevent them from doing so. Furthermore, if a majority of the members of the governing body of the city of Sleepy Eye deem such an audit in the public interest, they can make a written request therefor in accordance with the provisions of M. S. A. 215.20.

In addition, we are of the opinion that the goal of the original petition under consideration differs materially from that which existed in the cases giving rise to the rule that signatures become irrevocable after certification of the petition by the proper officer.

---

[4]For example, the record in the instant case discloses that a number of freeholders signing the original petition did so with the understanding that the state and not the city of Sleepy Eye would bear the cost of the audit. The 1951 legislature to obviate such a misunderstanding in the future amended M. S. A. 1949, § 215.19, to provide in part as follows: "At the time it is circulated, every petition shall contain a statement that the cost of the audit will be borne by the city, village, borough, town, or school district as provided by law." L. 1951, c. 185, § 1.

Nearly all of the decisions voicing that rule involve petitions seeking to initiate or discourage legislative functions. This is true of the cases decided by this court which are discussed earlier in this opinion. Public opinion concerning the advisability of legislative policies and the actions of governmental bodies shifts quickly and unpredictably. It can be persuasively argued that the proponents of an unpopular viewpoint must be given some assurance that the signatures they have obtained can be relied upon and that they be afforded the opportunity of having their proposal voted upon by the electorate.

But the goal of the petition in this case is far different. The petition merely requests the public examiner to perform a service for the city of Sleepy Eye. In the past the city had employed a firm of certified public accountants to perform this same function. Since the dispute in this case involves only the method of performing an administrative function, and neither the proponents of the petition nor the city can be substantially prejudiced by the withdrawals in view of plaintiff's willingness to pay the cost of the preliminary work done on the audit, we find no good reason why the withdrawals should not be permitted in this case. We therefore conclude that the trial court erred in holding that the withdrawal petition, certified as it was by the county auditor, was not timely and effectual.

There being no claim of public interest or necessity in having said audit, and it not even being asserted that the provisions of § 215.13[5] constitute independent grounds for the public examiner

[5]M. S. A. 215.13 provides as follows:

"The public examiner shall have like power and duty to supervise the accounts of all cities not included in section 215.12. He shall have the authority to require, in his discretion, the financial officers of any city not included in section 215.12 to send all books, accounts, and vouchers pertaining to the receipt, disbursement, and custody of its public funds to the office of the public examiner for examination. He may prescribe and install for such cities systems of accounts and reports, which shall be uniform for each class of cities and offices. *He may conduct such examinations of accounts and records as he may deem the public interest to demand.*

"The report of such examination shall be filed with the mayor and city council or commission; and, in case of any violation of law, it shall be

to continue with the same, we find no valid basis for the denial of injunctive relief in this case.

The order appealed from is reversed with directions to the trial court to grant plaintiff the injunctive relief requested upon plaintiff's payment of the public examiner's charge for the preliminary work done on July 2, 1951, as heretofore tendered. Since plaintiff has previously agreed to pay such charge in the event he is successful in this action, we need not determine whether such payment is mandatory in this type of case before injunctive relief may be granted. Furthermore, we express no opinion as to whether the withdrawal petition would have been timely if it had not been certified to the public examiner before a substantial amount of work had been done on the audit.

Reversed with directions.

KNUTSON, JUSTICE (dissenting).

I dissent. It seems to me that when the public examiner receives a petition for an audit, properly certified by the county auditor, he is under a duty to proceed with the audit. M. S. A. 1949, § 215.19, makes the certificate of the auditor conclusive evidence of the sufficiency of the petition in an action for costs of such audit. State v. Town of Balkan, 234 Minn. 329, 48 N. W. (2d) 515. To hold that, after the public examiner has commenced his audit, a few signers may withdraw and thereby render a petition, certified as sufficient, insufficient can lead to nothing but confusion. It is true in this case that only a small amount of work had been done before the attempted withdrawal. Supposing, in another case, work involving the expenditure of $1,000 or even more had been done. Are we then to hold that signers may still withdraw? It seems to me that the petitioners who do not wish to withdraw their signatures are entitled to some protection as well as those who for some reason or another, or for no reason at all, have a change of heart. It may be true that those who still wish to have an audit may go out and procure additional signers and have the examiner start over again,

prosecuted, as provided in section 215.12 with respect to the examination of cities of the first class." (Italics supplied.)

but does not that inevitably lead to a doubling up of expense? Supposing the examiner starts again, and again a small number withdraw. May this process go on ad infinitum, or where must it stop? I think that the rule should be that, absent a showing of fraud, it is too late to withdraw once the petition has been certified to the public examiner by the county auditor. At least, it should be too late once the work is begun. Any other rule will leave the examiner in the position of never knowing whether he has authority to complete an audit once it is started.

ON APPEAL FROM CLERK'S TAXATION OF COSTS.

On January 7, 1955, the following opinion was filed:

PER CURIAM.

Appeal from clerk's disallowance of taxation of costs and disbursements. Appellant contends that the well-established rule in this court that costs cannot be taxed against a state officer in litigation relating to the governmental affairs of the state (State ex rel. Smiley v. Holm, 186 Minn. 331, 243 N. W. 133) does not apply to this case. Cited as support for this claimed exception is Bartles Oil Co. v. Lynch, 109 Minn. 487, 124 N. W. 1, 25 L.R.A.(N.S.) 1234, which involved an action to enjoin the state oil inspector from preventing plaintiff's practice of selling illuminating oil to which a red coloring had been added. This court affirmed the clerk's taxation of costs against the state oil inspector, pointing out that there was no authority in the applicable statute which authorized the oil inspector's threatened act. The facts in the Bartles Oil Co. case do not parallel those now before us. The public examiner was authorized by M. S. A. 1949, § 215.19, to commence an audit in response to the original petition. By ceasing his audit upon learning of the second petition and seeking a test of its adequacy, the public examiner was merely attempting to determine whether this authority survived the second petition. His actions throughout have manifested an intention to remain within his granted powers.

The clerk's disallowance of taxation of costs against the public examiner is affirmed.