## JERRY DOSTAL AND ANOTHER v. COUNTY OF McLEOD AND OTHERS.

77 N. W. (2d) 654.

June 8, 1956—No. 36,803.

*Edward J. Gavin, Wilfrid E. Rumble, Richard J. Leonard, John L. Hannaford,* and *Doherty, Rumble & Butler,* for appellants.

*Arnold W. Beneke,* County Attorney, and *Wallace A. Thompson,* Assistant County Attorney, for respondents.

*Robins, Davis & Lyons, Solly Robins,* and *Willard L. Converse,* for Minnesota State Culinary Council, amicus curiae.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court.

The plaintiffs brought the action against the County of McLeod; its county commissioners, individually and as members of the board; and the sheriff of McLeod County, individually and as sheriff, under the Uniform Declaratory Judgments Act to have determined a question of construction of the so-called Dance Hall Act (M. S. A. 617.42 to 617.54).

Since 1941 a dance hall has been operated in McLeod County known as the Pla-Mor. A part of the business done at the Pla-Mor consisted of the sale of 3.2 beer, cigars, cigarettes, all forms of tobacco, beverages, and soft drinks at retail. During that time the owners and operators of the Pla-Mor have been issued a 3.2 beer license by the officials of McLeod County.

Prior to January 1, 1953, the Pla-Mor was owned by plaintiffs but was then sold to one Arthur Armonies with a substantial downpayment and a contract for the balance. About November 1, 1953, the defendants revoked the beer license which had been issued to Armonies because he was selling 3.2 beer at the Pla-Mor at the same time a public dance was being conducted. Armonies had been operating the Pla-Mor in the same manner that it had been operated by his predecessor since 1941, that is, conducting a dance hall selling 3.2 beer, cigarettes, etc. As a result of the revocation of the beer license, Armonies closed the ballroom and defaulted in his contract, and the plaintiffs again took possession.

Thereafter the defendants insisted that the plaintiffs install certain partitions which separated the dance hall from the portion of the building in which 3.2 beer was sold. Plaintiffs operated under these conditions until April 17, 1954, when they removed most of the partitions and reopened a door joining the dance floor with that portion of the building in which 3.2 beer was sold. The plaintiffs contend that under the laws of this state 3.2 beer may be legally sold in the same room at the same time a public dance is being con-

ducted. Defendants threatened to revoke the licenses which had been issued to the plaintiffs for the operation of the public dance hall and for the sale of 3.2 beer if plaintiffs continued to sell such beer in the hall. The case was tried on a stipulation of facts, and the court's findings of fact are not challenged on this appeal.

The trial court concluded that M. S. A. 617.46 prohibited the issuance of a public dance permit for any place which has any direct or indirect communication with any room in which intoxicating liquor is sold, given away, or otherwise used; that intoxicating liquor, as defined in § 617.42, includes and means ethyl alcohol and any distilled, fermented, spirituous, vinous, or malt liquor or liquid of any kind potable as a beverage, whenever any of said liquors or liquid contains one-half of one percent or more of alcohol by volume; and that plaintiffs were not eligible for a public dance permit for its premises so long as it had any direct or indirect communication with any room in which any malt liquor or liquid containing one-half of one percent or more of alcohol by volume is sold, given away, or otherwise used. The court further adjudged that any dance permit held by the plaintiffs for said premises was subject to revocation under § 617.53 and ordered judgment accordingly.

The trial court in its memorandum stated that L. 1923, c. 139, § 1, originally provided that the term "intoxicating liquor" as used in that act should be given the meaning as prescribed by L. 1919, c. 455, § 1, "and acts amendatory thereof," and that by the legislative enactment of M. S. A. 1945, § 617.42, the words "and acts amendatory thereof" were omitted. That court therefore took the position that inasmuch as the reference to amendatory acts was omitted from the 1945 enactment, there was no alternative left but to interpret the term "intoxicating liquor" as it was set out in L. 1919, c. 455, § 1, in which liquor is defined as including ethyl alcohol and any distilled, fermented, spirituous, vinous, or malt liquor or liquid of any kind potable as a beverage, whenever any of said liquors or liquid contains one-half of one percent or more of alcohol by volume.

The sole question raised on appeal is whether beer containing not more than 3.2 percent of alcohol by weight is an intoxicating liquor for the purposes of the Dance Hall Act (M. S. A. 617.42 to 617.54).

■ M. S. A. 617.46 declares that no permit to hold, give, and conduct a public dance shall be issued "for any place which has any direct or indirect communication with any room in which intoxicating liquor is sold, given away, or otherwise used." M. S. A. 617.42 contains the following sentence:

"* * * When used in sections 617.42 to 617.54, the term 'intoxicating liquor' and 'liquor,' 'sell' and 'sale' shall be given the same meaning, respectively, as is prescribed in Laws 1919, Chapter 455, Section 1."

L. 1919, c. 455, § 1, defines the terms above referred to as follows:

"Wherever used in this act the term 'intoxicating liquor' and 'liquor' shall include and mean ethyl alcohol and any distilled, fermented, spiritous, vinous or malt liquor or liquid of any kind potable as a beverage, whenever any of said liquors or liquid contain one-half of one per cent or more of alcohol by volume; * * *."

However, L. 1923, c. 139, § 1 (M. S. A. 617.42), provides that whenever the terms "intoxicating liquor," "liquor," "sell," and "sale" are used in that act they should be given the same meaning as prescribed therefor in L. 1919, c. 455, § 1, "and acts amendatory thereof." In other words, § 617.42 varies from L. 1923, c. 139, § 1, of which it is a continuation, in that it omits the phrase "and acts amendatory thereof." Plaintiffs contend, and it appears undisputed in the record, that the legislature's attention was never called to the fact that the above-quoted phrase had been deleted from the revision and asserts that § 617.42 is to be read as if those words were present.

While L. 1943, c. 545, § 2, conferred upon the revisor of statutes authority to make such changes in language and arrangement as he deemed necessary in order to simplify, consolidate, clarify, and codify the statutes in order to give effect to the intent of the legislature with respect to the laws embraced therein, it was not the intention of the legislature to confer upon the revisor of statutes the authority to make changes in existing laws. It therefore becomes the duty of this court, when an ambiguity arises as in this case because of an omission, deletion, or change in language in a new revi-

sion, to ascertain if possible the intent of the legislature. State v. Village of Pierz, 241 Minn. 37, 62 N. W. (2d) 498. It is our opinion in the instant case that, when the legislature adopted the text of the revisor of statutes which had omitted the words "and acts amendatory thereof" of L. 1923, c. 139, § 1, from the 1945 statutes without its knowledge, it had no intention, under the circumstances here, of amending the prior law.

In Beck v. Groe, 245 Minn. 28, 70 N. W. (2d) 886, the trustee of the deceased, Ardell L. Beck, brought an action against Gerald D. Groe, The Prom, Inc., and others to recover for the death of deceased, which was alleged to have been caused by the negligent operation of an automobile by Groe. It was alleged that the negligence was caused by the unlawful sale of intoxicating liquor by The Prom, Inc., to Gerald D. Groe, in violation of § 340.95 of the Minnesota Civil Damage Act. The contention of the plaintiff was that The Prom, Inc., in dispensing 3.2 beer to Groe, a minor, while he was in the Terp Ballroom in Austin, which was owned by The Prom, Inc., constituted an illegal sale of intoxicating liquor. He further alleged that this sale of intoxicating liquor caused Groe to become intoxicated, which in turn was the cause of his negligent driving and the accident. Plaintiff claimed that this sale of 3.2 beer constituted a sale of intoxicating liquor under the Civil Damage Act, § 340.95, since § 340.87, which defined intoxicating liquor, was on the statute books prior to and at the time L. 1933, c. 116 (the beer act), and the liquor control act were enacted and therefore legally controlled by legislative definition what constituted selling intoxicating liquor in this state. The first sentence of § 340.87 reads as follows:

"The terms 'intoxicating liquor' and 'liquor,' wherever used in this chapter, include distilled, fermented, spirituous, vinous, and malt liquor."

In the Beck case this court analyzed the history of the enactments of our legislature pertaining to the exercise of its police power in defining intoxicating liquor. As the decision in that case is a recent one we shall not again repeat what we said there except to say the court determined that when the Minnesota legislature of 1933

authorized the sale of beer containing no more than 3.2 percent alcohol by weight and designated it as a nonintoxicating beverage it must have intended as a matter of law that 3.2 beer is nonintoxicating.

In both the Beck case and the instant case the acts to be construed, that is, the Civil Damage Act and the Dance Hall Act, were in effect at the time the legislature enacted the beer act and the liquor control act which acts defined 3.2 beer as nonintoxicating. In the Beck case, after discussing the intent of the legislature in promulgating the latter enactments, we said (245 Minn. 42, 70 N. W. [2d] 896) :

"* * * We cannot ascribe to the legislature any intent not expressed in its enactments when it considered all related matters involving the control and regulation of alcoholic beverages of whatever content and specifically designated 3.2 beer as nonintoxicating and all spirituous, vinous, or malt beverages in excess thereof as intoxicating liquor setting up separate control and separate regulations in dealing with related subjects. We must and do take it for granted that the legislature had in mind the effect of later and specific legislation, upon existing statutes, where inconsistencies might arise between the two, and, if only inconsistent in part, that a modification or amendment *pro tanto* would be the applicable rule of construction."

Inasmuch as it is our opinion that the legislature did not intend to amend the prior law when it adopted the revision with the deletion of the words above referred to, we believe that Beck v. Groe, *supra,* applies in the instant case and that the decision of the trial court must be reversed.

It must be emphasized that in this decision, as in the Beck decision, that we as a court are not determining that 3.2 beer is a nonintoxicating beverage. We are merely stating what we consider to be the intent of the legislature on this subject. It is true that it is within the power of the legislature to say that malt beverage containing not more than 3.2 percent of alcohol by weight is nonintoxicating for some purposes and that malt beverage containing one-half of one percent or more of alcohol by volume is intoxicating for other

purposes. Should the legislature desire to change this definition for the purpose of any given enactment, such as the Dance Hall Act, for example, it must state this desire in clear and unequivocal language. This is a function of the legislature and not of this court, and until the legislature has taken such action we must act in accordance with its present intentions on the subject of intoxicating and nonintoxicating beverages as we understand them to be. If the legislature should desire to make a distinction in the definition of intoxicating and nonintoxicating malt beverages for the purposes of the so-called Dance Hall Act and for other purposes, it should be a simple matter under its powers to do so in a future legislative session.

Reversed.